## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-12624-KHT |
| DNC and TCPA LIST | ) | |
| SANITIZER, LLC | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor | ) | |

| | | |
|---|---|---|
| MICHAEL O'HARE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proceeding No. 25-1124-KHT |
| v. | ) | |
| | ) | |
| ADAM YOUNG, an individual; | ) | |
| And | ) | |
| RINGBA, LLC, a Delaware | ) | |
| limited liability company | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT OF DNC AND TCPA LIST SANITIZER, LLC AND MICHAEL O'HARE FOR A TEMPORARY RESTRAINING ORDER AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1

DNC and TCPA List Sanitizer, LLC, the Debtor-in-Possession, ("TCPA" or the "Debtor") and its principal, Michael O'Hare, respectfully submit this memorandum of law in support of their Complaint seeking (i) a temporary restraining order and preliminary injunction enjoining Creditors Adam Young and Ringba, LLC (collectively "Ringba") from continuing prosecution a contempt proceeding (the "Contempt Litigation") against Mr. O'Hare arising from a state court litigation ("State Court Litigation")[1] and (ii) in the alternative, a declaration of the Court that the continued prosecution of the Contempt Litigation against the Mr. O'Hare is a violation of the automatic stay provisions of 11 U.S.C. §362.

Ringba's attempt to proceed with the Contempt Litigation is a clear and impermissible circumvention of the Bankruptcy Code's automatic stay protections. Although the underlying allegations in the Contempt Litigation assigns blame to the **Debtor TCPA** for its participation ***in this proceeding***, Ringba seeks to recover from Debtor's principal, Mr. O'Hare in an end run around the Bankruptcy Code's protection of the automatic stay.

Additionally, Ringba urges this Court to prejudge the Debtor's conduct as taken in bad faith, even though the state court has made no determination of whether **_Debtor_** violated any orders. Moreover, the Debtor will not be a party to any hearing in the Contempt Litigation. Nonetheless, the state court will be compelled to make determinations about whether the Debtor, a non-party to that

---

[1] The State Court Litigation was filed prior to the Debtor's petition date and resulted in a judgment against the Debtor.

proceeding, violated a court order, which is in direct conflict with the federal protections afforded under the automatic stay.

## I.      PRELIMINARY STATEMENT

During to the pendency of this bankruptcy proceeding, on September 5, 2024, Defendants filed Motion for Contempt Citation against Plaintiff in the El Paso County District Court, Cause No. 2021-CV-031668 (the "Contempt Litigation").

Ringba seeks to hold Mr. O'Hare personally liable for allegedly violating the protective order when he, on behalf of ***TCPA as Debtor***, sought leave from this Court to conduct a Rule 2004 examination of Adam Young, Harrison Gervitz, and Ringba, LLC. (ECF No. 135). However, because he is the Chief Executive Officer of Debtor, the claim against him is in effect a claim against the Debtor. Any defense costs, settlement payments, or adverse judgments incurred by Mr. O'Hare could give rise to <u>statutory</u> and common law indemnification claims that can be asserted against the Debtor's estate.

Moreover, if the Debtor is forced to participate in the Contempt Litigation to protect its interests, it will continue to expend significant time and resources, to the detriment of the bankruptcy estate.  Therefore, the continuation of the Contempt Litigation against Mr. O'Hare will have immediate adverse economic consequences for the Debtor's estate and may increase administrative claims and delay payments to unsecured creditors as a part of the Debtor's reorganization efforts.

This adversary proceeding seeks two alternative forms of relief against Adam Young and Ringba, LLC (collectively, "Ringba" or the "Defendants"). First, a declaration that, pursuant to 11 U.S.C. §362, Defendants are stayed from the

continued prosecution of the Contempt Litigation against Mr. O'Hare.  Second, in the alternative, an injunction pursuant to 11 U.S.C. §105 enjoining Ringba from pursing the Contempt Litigation against Mr. O'Hare.  As explained below, relief is necessary from this Court to ensure that the Debtor is not forced to waive its rights under the automatic stay by being required to participate in the Contempt Litigation to protect its interests and property of the bankruptcy estate.

## II.  JURISDICTION

The Complaint is an adversary proceeding initiated by the Debtor and Mr. O'Hare pursuant to Rule 7001(7) (to obtain an injunction or other equitable relief), Rule 7001(9) (to obtain a declaratory judgment) and Rule 7003 of the Federal Rules of Bankruptcy Procedure.

Bankruptcy Rule 7065 provides that a temporary restraining order or preliminary injunction may be issued by the Court without security.

The Debtor seeks declaratory judgment and injunctive relief to protect the Debtor's property as of the commencement of the case and property of the estate.

This Court has jurisdiction over the parties and the subject matter of the Complaint pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334 and the standing order of reference in this judicial district. The Complaint is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(G) an accordingly, this Court has the power to enter final findings of fact and conclusions of law, subject to review pursuant to 28 U.S.C. §158. Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409.

### III.    FACTUAL BACKGROUND

#### A.    The Debtor

TCPA is a technology and information company in the business of providing lists of telephone numbers to its customers to aid them in avoiding litigation for violating the Telephone Communications Privacy Act. TCPA is owned in part and is managed by O'Hare. On May 16, 2024, (the "Petition Date"), the Debtor commenced a case under subchapter 5, of title 11 of the United States Code (the "Bankruptcy Code").

The Debtor continues to manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

#### B.    The State Court Litigation

In 2020, Defendant Ringba registered for an account with TCPA and downloaded TCPA's trade secret information in violation of the terms and conditions of TCPA's website. TCPA sued Ringba, Young, and others for breach of contract among other claims.  That action constitutes the State Court Litigation, Case No. 2021-CV-031668 (El Paso County, Colorado).

The El Paso County District Court entered terminating sanctions against TCPA for repeated discovery violations and awarded Ringba over $650,000 in costs and attorney fees. TCPA filed this bankruptcy action on May 16, 2024, in part due to the attorney fee award.  (ECF No. 1). Ringba filed a proof of claim, which TCPA contests.

TPCA appealed the terminating sanctions and the attorney fee award amount.  The terminating sanctions were affirmed by the Colorado Court of

Appeals, but a petition for certiorari is pending with the Colorado Supreme Court. Briefing to the Colorado Court of Appeals on the attorney fee amount was recently completed. Ringba's consolidated briefing in the two appeals brazenly admits that TCPA produced as compelled by the court, but contends that it should be sanctioned anyway. *See TCPA Litigator List v. Ringba, LLC et al.*, No. 2024CA265.[2]

Because of the broad discovery available in this Court, and because TCPA is permitted to contest the viability of Ringba's claim in this bankruptcy, ***Debtor***, not Mr. O'Hare personally, sought discovery under Rule 2004. Without disclosing the information that the Court sealed, the discovery relates generally to a criminal investigation and proceeding against Ringba, LLC, Adam Young, and Harrison Gevitrz that can also be gleaned from publicly available information regarding a blue screen of death tech support fraud.[3]

---

[2] Combined with their briefing in 2023CA891, Ringba admits the following:
TCPA's website "was based on the backend code that [Ringba] had been requesting for months and that was the subject of numerous discovery requests and court orders," and for which TCPA had been sanctioned (Ans. Br., 2023CA891 at 18-19); and
TCPA "offered to produce the backend data for [its] website in a clean room." 2024CA265, Ans. Br. at 10-11.

[3] *United States v. Sean Hitchcock*, No. 24-cr-47-JJM, (D.R.I.) . The government's information and the *sentencing* hearing transcript of its former employee detail Ringba's alleged "tech support" fraud as follows:

[The] Government's evidence would establish the following: First, that tech support fraud was a multitiered form of telemarketing fraud in which, first, publishers posted online advertisements that misled victims to believe that viruses had been detected on the victims' computers and then urged the victims to telephone a specified number for assistance.

*See United States v. Sean Hitchcock*, No. 24-cr-47-JJM, (D.R.I.); *Ringba, LLC v. Sean Hitchcock, et al*, No. 24CA2583 (13rd Judicial Circuit Court, Hillsborough County, Florida), Dkt. No. 90 (Order granting "DEFENDANTS' MOTION TO STAY PENDING CRIMINAL TRIAL OF RINGBA, LLC").

Ringba quickly moved to seal TCPA's request for Rule 2004 discovery here, which the Court granted; and in parallel, it filed a Motion and Affidavit for Citation of Contempt of Court, in which it alleged that O'Hare, on behalf of Debtor, allegedly used information that was designated as "highly confidential-attorney's eyes only" to create an interrogatory attached to TCPA's Motion for Leave to Conduct a Rule 2004 examination. (ECF No. 135).

Remarkably, during a hearing on October 8, 2024, Ringba's counsel, represented to this Court that TCPA, as the debtor, had violated bankruptcy procedures and rules by ***O'Hare*** retaining undersigned counsel to represent himself. And yesterday, on April 9, 2025, Ringba asked this Court to deny approval of the Debtor's proposed plan, citing ***Debtor's*** bad faith in propounding Rule 2004 interrogatories for purported violation of the State Court Litigation Protective

---

Second, victim telephone calls generated by these misleading ads were sold and routed directly to call centers or intermediary call brokers through whom the calls were ultimately sold and routed to call centers.

And, third, call center operators received the victims' calls and offered the victims computer technical support in exchange for payment.

Order. (Dkt. No. 359, ¶35). The Contempt Litigation arises out of, and is directly and inextricably intertwined with, the bankruptcy proceeding before this Court.

**C.     The Need for a Temporary Restraining Order and Declaratory and Injunctive Relief**

The Debtor was forced into bankruptcy due to the overwhelming economic pressures exerted by the attorney fee award.  Now, the cost of defense of the Contempt Litigation and the potential liability of the Debtor and Mr. O'Hare arising from Contempt Litigation have, and will continue to, immediately and irreparably harm the Debtor's resources, bankruptcy estate, and delay reorganization under Chapter 11 of the Bankruptcy Code, via an increase of administrative expenses.

The Debtor may be obligated under statutory and common law indemnification principles to (1) reimburse the Plaintiffs for costs in defending the Contempt Litigation; and (2) indemnify the Plaintiffs for any judgments rendered against Mr. O'Hare therein.  If the Contempt Litigation is not immediately stayed, Mr. O'Hare will continue to incur costs of defending that lawsuit.

Moreover, to the extent the Mr. O'Hare is determined to be liable for any claim asserted in the Contempt Litigation, such judgment or settlement may be imputed upon the Debtor, which could bind the Debtor to a liquidated amount for indemnity purposes.  This scenario not only forces the Debtor to remain active in the Contempt Litigation in order to protect its interests, but also results in the unauthorized liquidation of an unliquidated claim outside the Bankruptcy Court.

Second, due to the nature of the relationship between Mr. O'Hare and the Debtor, and the fact that Ringba seek to hold Mr. O'Hare liable solely based on his

conduct in relation to this bankruptcy case and not based upon his independent conduct, a judgment against him necessarily requires a finding of liability on the part of the Debtor.  The state court will be required to evaluate the Debtor's conduct, through its manager, to determine whether a violation of a court order occurred upon which Mr. O'Hare's liability, for Debtor's conduct, can be predicated.

Allowing the Contempt Litigation to continue against Mr. O'Hare creates a lose-lose situation for the Debtor, its bankruptcy estate, and its creditors.  On the one hand, should the Debtor not participate in the Contempt Litigation, it will be deprived of the opportunity to properly protect its interests and defend against Defendants' allegations, and should a judgment render in favor of Defendants, the Debtor will be unfairly bound by the judgment.  On the other hand, should the Debtor participate in the Contempt Litigation, it will be forced to expend what promises to be a substantial amount of time and resources to protect its interests. Both scenarios will deplete property of the Debtor's bankruptcy estate, disadvantage the Debtor's other creditors, and increase administrative claims while delaying the reorganization process if the administrative claim needs to be liquidated.

At this juncture, the prompt issuance of a declaration concerning the application of the automatic stay to Mr. O'Hare and award of injunctive relief are necessary to protect the Debtor, its bankruptcy estates, and its creditors from the immediate and irreparable harm that has been and will continue to be caused by the continuation of the Contempt Litigation against Mr. O'Hare.

## IV.   ARGUMENT

### A.   The Court Should Issue a Declaration that the Contempt Litigation Against Mr. O'Hare is Stayed Pursuant to Section 362(a)(1) and (3).

Because the Contempt Litigation against Mr. O'Hare impacts the Debtor, its estate and requires an adverse finding as against the Debtor for there to be any liability against Mr. O'Hare, the assertion and prosecution of such claims are equivalent to a violation of the automatic stay. Pursuant to Bankruptcy Code section 105{a), the Court can extend the stay to claims against Mr. O'Hare. ln *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the United States Supreme Court ruled that, even in a non-core proceeding, the bankruptcy court may issue an injunction as long as it is not final. Here, the Debtor and Mr. O'Hare's Complaint is a core proceeding requesting issuance of orders carrying out provisions of title 11. Thus, the Court is clearly empowered to grant a declaratory judgment that the continuance of Contempt Litigation against Mr. O'Hare is a violation of the automatic stay.

Section 1334 of title 28 grants the Bankruptcy Court broad power to issue orders necessary to effectuate reorganization. *See e.g. In re Johns-Manville Corp*, 801 F.2d 60, 62, 63-64 (2d Cir. 1986); *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).

A primary vehicle for enforcement of the bankruptcy courts' jurisdictional grant is the automatic stay pursuant to 11 U.S.C. § 362. Section 362(a) provides in relevant part as follows:

> Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title operates as a stay, applicable to all entities, of

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case tinder this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(l) and (3).

Section 362(a)(l) will be imposed to stay an action against a nondebtor party "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that the judgment against the third-party defendant will in effect be a judgment or finding against the debtor.*" Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (*quoting A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986). Based upon the facts set forth herein, it is undisputable that this standard is satisfied in this case. *See also*, *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colorado, LLC*, No. 11-CV-03333-WYD-KLM, 2013 WL 708493, at *2 (D. Colo. Feb. 26, 2013).

Section 362(a)(3) provides that a chapter 11 petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." The Fifth Circuit set forth three factors to determine whether the stay pursuant to §362(a)(3) applies to claims against non-debtor entities:

(1) the automatic stay applies to a cause of action that under state (or federal) law belongs to the debtor, or

(2) the automatic stay applies to a cause of action that seeks to recover property of the estate when the property is held or controlled by a person or entity other than the debtor, and

(3) in applying the above rules, a court must keep in mind the general bankruptcy policies of securing and preserving the debtor's property and ensuring equal distribution of the Debtor's assets to similarly-situated creditor.

*Schimmelpenninck v. Byrne* (*In re Schimmelpenninck*), 183 F.3d 347, 355 (5th Cir. 1999).

In the present action, the Debtor may be subject to indemnity claims asserted by Mr. O'Hare for any damage in accordance with state law indemnity statutes. Accordingly, any defense costs, settlement payments, or adverse judgments incurred by Mr. O'Hare could give rise to common law indemnification or contribution claims that can be asserted against the Debtor's estate. Moreover, the Contempt Litigation attributes no independent wrongdoing Mr. O'Hare.

Rather the Contempt Citation filed in the State Court Litigation asserts that Mr. O'Hare acted on and behalf of the Debtor: "**TPCA Litigator, at the direction of Michael O'Hare [disclosed AEO information]**." Mtn. for Contempt Citation ¶ 12 (Sept. 4, 2024)(emphasis added).

In Colorado, members or managers of a limited liability company are entitled to indemnification for liability incurred in the ordinary course of business or preservation of its business, so long as the liabilities were incurred without violating that person's duties to the LLC. C.R.S. § 7-80-407. In short, any liability imposed on Mr. O'Hare is subject to indemnity. Thus, there is such identity between

the Debtor and Mr. O'Hare that the Debtor may be said to be the real party defendants and that a judgment against the Mr. O'Hare will in effect be a judgment or finding against the Debtor. *Inland Pac. CO*, 2013 WL 708493, at *2.

Because Ringba's claims against Mr. O'Hare are predicated entirely on a theory of the Debtor's liability, unless and until there is a finding of violation of the State Court Litigation Protective Order on the part of the Debtor, there cannot be a finding of liability on the part of Mr. O'Hare. Under these circumstances and the theories of liability pursued by Ringba in the Contempt Litigation, the Debtor and Mr. O'Hare are so entwined that they cannot be parsed—there is no way the Contempt Litigation can proceed against Mr. O'Hare without implicating the Debtor.  *See Crocs, Inc. v. Effervescent, Inc.,* 2018 U.S. Dist. LEXIS 44400, *4-6, No. 06-cv-00605-PAB-KMT/16-cv-02004-PAB-KMT (D. Colo., March 19, 2018). . .The prosecution of any claim against Mr. O'Hare will necessarily "have an immediate adverse economic consequence" for the Debtor's estates.  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).  Moreover, to the extent that Ringba asserts a de facto claim against the Debtor, it violates the automatic stay.

The Court should issue a declaration that the Contempt Litigation against Mr. O'Hare stayed for the additional reason that Mr. O'Hare and the Debtor have such identity of interest that the suit against him are essentially a suit against the Debtor.  Any finding of liability against him requires a finding of liability against the Debtor. *See Crocs, Inc. v. Effervescent, Inc.,* 2018 U.S. Dist. LEXIS 44400, *4-6, No. 06-cv-00605-PAB-KMT/16-cv-02004-PAB-KMT (D. Colo., March 19, 2018). The

*Crocs* Court found that because there was "significant entwinement among the parties and the claims asserted," and to avoid proceeding in "a piecemeal fashion," judicial economy would best be served by staying the non-bankruptcy proceedings though an administrative closure of the pending lawsuits.

As explained in *A.H. Robins Co. v. Piccinin*, the Fourth Circuit affirmed an order that enjoined litigation pending in various state and federal courts against the debtor's co-defendants, some of whom were non-debtor employees. The Fourth Circuit concluded that section 362(a)(l) applies to stay actions against non-debtor entities "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co.,* 788 F.2d at 999; *see also McCartney v. Integra Nat'l Bank North,* 106 F.3d 507, 511 (3ʳᵈ Cir. 1996) (because debtor would have been the real party in interest in deficiency judgment action against his wholly-owned, non-debtor corporation, automatic stay precluded pursuit of such action against the non-debtor).

The facts and analysis of the Colorado district court's opinion in *Inland Pac. Colorado, LLC*, are instructive in this case.  No. 11-CV-03333-WYD-KLM, 2013 WL 708493, at *2.  There, the court extended the protection of the automatic stay to co-defendants in a case involving a similar set of allegations to the one at bar.  Prior to the debtor filing for bankruptcy, the plaintiff sued the debtor company, its President, O'Byrne, and WPDC, an entity receiving a transfer from the debtor

company.  The plaintiff alleged that the president of the debtor company violated

Colorado's Uniform Fraudulent Transfer Act ("CUFTA") and that the entity

receiving a transfer from the debtor was unjustly enriched as a result of the

fraudulent transfer.  *Id.* at *1.  In ruling that the automatic stay extended to

O'Byrne and WPDC, the court reasoned as follows:

> In the case at hand, it appears that the claims asserted by Plaintiff
> against [the debtor's] codefendants may adversely impact the
> bankruptcy proceeding and the assets of [the debtor] and thus
> impact [the debtor's] efforts at reorganization. This is most clear as
> to the claim under CUFTA against O'Byrne. Defendants point out
> that [the debtor's] bankruptcy estate includes four fraudulent
> transfer claims. A claim that [the debtor's] assets were fraudulently
> transferred by O'Byrne or others would appear to be a claim that
> should be resolved in the bankruptcy proceeding, as it is an asset of
> [the debtor]. If [the debtor] is hindered in its ability to prosecute
> those claims and to use proceeds from the claims to satisfy all of its
> creditors because of a judgment in this case on the CUFTA claim,
> [the debtor's] efforts to reorganize may be stifled. Further, a finding
> that O'Byrne, the president of [the debtor], transferred assets out of
> the company could be found to be binding against [the debtor].
>
> Similarly, the claim against WPDC, while not couched as a
> fraudulent transfer claim, also would appear to impact the
> fraudulent transfer claims in the bankruptcy proceeding as it
> alleges that WPDC was unjustly enriched by the transfer to it, and
> its current ownership of, property that previously belonged to [the
> debtor]. The CUFTA and unjust enrichment claims in this Court
> involve essentially the same facts and same witnesses as in the
> bankruptcy fraudulent transfer claims. The witnesses will be
> identical, and the same documents and evidence will be used to
> prove each of the claims. Allowing the Trust to pursue these claims
> would appear to frustrate the purposes of the automatic stay
> provision as it would subject [the debtor] to a "scramble for its
> assets" in both this proceeding and the Bankruptcy Case and also
> allow the Trust to pursue its remedy to the disadvantage of other
> creditors.

*Id.*

The claims against Mr. O'Hare are not separate and independent from those asserted against the Debtor. Indeed, Ringba expressly states as much: "**TPCA Litigator**, at the direction of Michael O'Hare [**disclosed AEO information**]." Mtn. for Contempt Citation ¶ 12 (Sept. 4, 2024)(emphasis assed).

Staying the Contempt Litigation is critical to prevent waiver of the protections provided automatic stay afforded the Debtor pursuant to Section 362 of the Bankruptcy Code. The legislative history of section 362 illustrates Congress' intent to afford a broad scope to the automatic stay in order to maximize the stays protections of both the Debtor and creditors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions, it permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressure that drove him into bankruptcy.

H.R. Rep. No. *595,* 95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54-*55* (1978), reprinted *in* 1978 *U.S. Code Cong. &Admin. News* 5787, 5840-41, 5963. *See also Job v. Calder (Tn re Calder),* 907 F.2d 953,957 (10th Cir. 1990) ("purpose of automatic stay is to give debtor a breathing spell from his creditors") (citations omitted); *McCartney v. Integra Nat'l Bank North* 106 F.3d 506, 509 (3d Cir. 1997) citing *Maritime Elec. Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (automatic stay prevents debtor's estate from being eaten away by creditors' lawsuits before estate has chance to reorganize); *In re The Drexel Burnham Lambert Group. Inc.*, 113 BR. 830,837 (Banks, S.D.N.Y. 1990) ("automatic stay is key to the collective and preservative nature of a bankruptcy proceeding").

Such circumstances are present here. Absent a declaration that the automatic stay applies to the Contempt Litigation against Mr. O'Hare, the Debtor will be deprived of the "breathing spell" contemplated by Congress to permit a chapter 11 Debtor an orderly environment in which to formulate and propose a chapter 11 plan.

Because the Contempt Litigation will force the Debtor to effectively waive the benefit of the automatic stay and devote its valuable resources of the estate to preserve its rights, the Court should declare that the automatic applies to Mr. O'Hare.

**B.     The Court Should Enjoin Litigation Against Mr. O'Hare Pursuant to Bankruptcy Code Section 105(a) to Carry Out Bankruptcy Code Sections 524(a) and 1129.**

The standard in the Tenth Circuit for the issuance of a preliminary injunction pursuant to Fed. R. Civ. P. 65, made applicable herein by Fed. R. Bankr. P. 7065, requires that the party seeking such relief demonstrates both irreparable harm if the relief is not granted and prima facie showing of a reasonable likelihood of success on the merits. *Lundgrin v. Claytor,* 619 F. 2d 61, 63 (10th Cir. 1980) (*citing Crowther v. Seaborg,* 415 F.2d 437,439 (101h Cir. 1969)). The Debtor is entitled to injunctive relief where the undisputed facts show that the Debtor is the true target of the Contempt Litigation, in violation of the automatic stay, and, as a result, the Contempt Litigation will irreparably harm the Debtor's restructuring efforts via a significant increase in administrative expenses.

The applicable standard for issuance of a temporary restraining order mirrors the standard governing the issuance of a preliminary injunction. Specifically, the movant must demonstrate irreparable harm, and either (1) a

likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in its favor. Fed. R. Bankr, P. 7065.

However, in the bankruptcy context, preliminary injunctions are issued pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065. Section 105(a) confers upon the Bankruptcy Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

A section 105 injunction may be issued to enjoin a third party lawsuit where there is an "identity of interest" between the debtor and the non-debtor such that the debtor is the real party in interest and the litigation would "directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization." *Gillman v. Continental Airlines, Inc. (In re Continental Airlines)*, l 77 B,R. 475, 479 {D. Del. 1993). As explained herein, this standard is satisfied as it pertains to the Contempt Litigation and Mr. O'Hare.

An injunction under section 105(a) is warranted where (1) there is danger of imminent, irreparable harm to the estate including delaying the debtor's reorganization efforts if the administrative expense has to be liquidated first, (2) there is a reasonable likelihood of a successful reorganization, (3) the balance of hardship weighs in favor of the debtor, and (4) the public interest in a successful bankruptcy reorganization outweighs competing interests. *In re Health Care Org.,* 210 B.R. 228, 232-33 (S.D.N.Y.1 1997). As discussed more fully below, the Debtor

and Mr. O'Hare's motion to enjoin the Contempt Litigation against Mr. O'Hare satisfies each of these requirements.

### 1.     There is a Danger of Irreparable Harm to the Debtor.

The Debtor's reorganization efforts will be negatively impacted if the Contempt Litigation is allowed to proceed against Mr. O'Hare, and will likely result in an increase of administrative expenses. There is the risk that indemnification claims could be asserted against and fix liability against the Debtor. The Debtor may be obligated under <u>statutory</u> and common law indemnification principles to reimburse Mr. O'Hare his costs in defending the Contempt Litigation and indemnify Mr. O'Hare for any judgments rendered against him therein. C.R.S. § 7-80-407 (members or managers of a limited liability company entitled to indemnification for liability incurred in the ordinary course of business or preservation of its business).

As explained, Ringba's claim of wrongdoing is directed against **TCPA**, for TCPA's conduct in this bankruptcy proceeding, and it intends to hold Mr. O'Hare, in his capacity as an officer for the Debtor as the responsible party for violating a protective order for potentially disclosing publicly available information about a criminal investigation into Ringba's fraud on the American public.

The Contempt Litigation is an attempt to circumvent the automatic stay afforded to debtors.  Any judgment against Mr. O'Hare would impede upon the Debtor's ability to reorganize. Indeed, Ringba is using the potential liability against Mr. O'Hare as a foregone conclusion of bad faith and wrongdoing by **TCPA** and objects to confirmation on that basis.

Moreover, a judgment against Mr. O'Hare in the Contempt Litigation would necessarily require a finding of wrongdoing against TCPA, although TCPA is not a party to that proceeding.

### 2.   There is a Reasonable Likelihood of a Successful Reorganization.

At the present time, the Debtor can easily demonstrate a reasonable likelihood of a successful reorganization. The Debtor is diligently pursuing efforts to formulate and effectuate a plan of reorganization, and indeed, it has amended its plan multiple times to address the creditors' objections. The tight time frames of the Subchapter V of Chapter 11 will keep this case moving forward on an expedited basis.

### 3.   The Balance of Hardship Weighs in Favor of the Debtor.

The balance of hardships tips decidedly toward the Debtor. For the reasons discussed above, the harm to the Debtor includes additional costs that it may incur to indemnify Mr. O'Hare and more importantly, the Contempt Litigation will detract from the Debtor's efforts in reorganization. As noted above, the central allegation in the contempt citation is against **TCPA**, which Ringba alleges acted at the direction of Mr. O'Hare. Thus, the Debtor will be adjudicated as liable, although not afforded the benefit of an automatic stay.

Conversely, given the short time in which the Debtor anticipates that it will remain in chapter 11, staying the further prosecution of the Contempt Litigation against Mr. O'Hare will not prejudice Ringba.

### 4.   The Granting of the Injunction Serves The Public Interest

The injunction the Debtor requests will serve the public interest by assisting the reorganization of a beleaguered entrepreneurs. *In re American Film Technologies,* 175 B.R. at 849 (in the bankruptcy context "public interest" is met by promoting successful reorganization); *Sudbury,* 140 B.R. at *465* ("[c]ourts have generally recognized a public interest in reorganization") (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198,204 (1983)); *Johns- Manville v. Asbestos Litig. Group (in re Johns-Manville Com.,* 26 BR. 420,428 (Bankr.S.D.N.Y. 1983) ("this court finds the goal of removing all obstacles to plan formulation eminently praiseworthy and supports every lawful effort to foster this goal while protecting the due process rights of all constituencies").

Given the strong possibility of a successful reorganization if the relief requested herein is granted, the public interest weighs strongly in favor of granting the injunction. Absent an injunction, as explained herein, the ability of the Debtor to successfully reorganize may be seriously jeopardized.

Pursuant to the Courts powers under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," as well as the ability of the Debtor to meet all four elements of the test for injunctive relief, the Debtor seek injunctive relief to bar Ringba from pursuing the Contempt Litigation against Mr. O'Hare.

## V.    CONCLUSION

For the foregoing reasons, the Court should (i) issue a declaratory judgement that continuing the Contempt Litigation against Mr. O'Hare is a violation of the

automatic stay, (ii) in alternative, enter an order preliminarily enjoining Ringba from continuing the Contempt Litigation, and (iii) granting such other and further relief as the Court deems just.

April 11, 2025.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/ Aaron Garber
Aaron A. Garber #36099
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
agarber@wwc-legal.com
*Attorney for Debtor DNC and TCPA Sanitizer, LLC*

ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.

*s/Benjamin J. Woodruff*
Benjamin J. Woodruff
Jason R. Wareham
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
E-mail: bwoodruff@allen-vellone.com
E-mail: jwareham@allen-vellone.com
*Attorneys for Michael O'Hare*