## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| DNC and TCPA LIST SANITIZER, LLC, | Bankruptcy Case No. 24-12624 KHT |
| Debtor. | Chapter 11 |
| DNC and TCPA LIST SANITIZER, LLC and MICHAEL O'HARE, | |
| Plaintiffs, | Adv. Proc. No. 25-1124 KHT |
| v. | |
| ADAM YOUNG, an individual; and RINGBA, LLC, | |
| Defendants. | |

### OBJECTION TO MOTION OF DNC AND TCPA LIST SANITIZER, LLC AND MICHAEL O'HARE FOR DECLARATORY AND INJUNCTIVE RELIEF FILED BY DEFENDANTS

Defendants Adam Young and Ringba, LLC (together, "Ringba"), by and through their undersigned counsel, Womble Bond Dickinson (US) LLP, hereby object to the Motion of DNC and TCPA List Sanitizer, LLC and Michael O'Hare for a Temporary Restraining Order and for Declaratory and Injunctive Relief filed on April 11, 2025 at Docket No. 3 (the "Objection").[1]  In support of its Objection, Ringba states as follows:

---

[1] The portion of the Motion requesting a temporary restraining order was summarily denied by the Court. Docket No. 8. Accordingly, the Objection responds to the portion of the Motion requesting a preliminary injunction only.

1

## INTRODUCTION

This is a case of a non-debtor individual attempting to use the automatic stay as a shield to protect himself individually from misconduct relating to his personal violation of a prior state court protective order. In May 2022, in litigation between Ringba and the Debtor, the District Court of El Paso County, Colorado, entered a Protective Order, preventing the disclosure of designated, confidential information. The Debtor's principal, Mr. O'Hare, was also subject to the Protective Order. Despite this court-ordered obligation, Mr. O'Hare brazenly and publicly divulged Ringba's information that had been designated with the highest possible confidentiality designation— "Highly Confidential – Attorneys' Eyes Only."

To uphold the State Court's Protective Order and prevent the further disclosure of the highly sensitive information, Ringba filed a "Motion and Affidavit for Citation for Contempt of Court" *against Michael O'Hare*, not the Debtor. Ultimately, the Debtor and Mr. O'Hare initiated the instant Adversary Proceeding, arguing that the automatic stay under 11 U.S.C. § 362(a) should extend to Michael O'Hare, because the Contempt Action could somehow impact the liability and estate of the Debtor. The Debtor and Mr. O'Hare also seek a preliminary injunction staying the Contempt Action, pending a determination in the Adversary Proceeding, which is the subject of this Objection.

The Debtor's and Mr. O'Hare's motion for a preliminary injunction must be denied because they have not satisfied their high burden required for a preliminary injunction. First, the Debtor and Mr. O'Hare have absolutely no chance of success on their meritless request to extend the automatic stay to non-debtor third party, Mr. O'Hare. This is because: (i) the Contempt Action is a *post-petition* action based on Mr. O'Hare's post-petition violation of the Protective Order; (ii) the automatic stay does not apply to the Contempt Action; (iii) no unusual circumstances apply

here that would justify the "narrow exception" of extending the automatic stay to a non-debtor. Indeed, Ringba's requested relief does not even mention the Debtor, and instead seeks such relief such as an affidavit from Mr. O'Hare regarding the scope of his violation, an order directing Mr. O'Hare to destroy existing documents he should not have, and an order enjoining him from further violating the Protective Order, to which he is already obligated to adhere. Moreover, the Debtor has failed to demonstrate any of the remaining preliminary injunction factors are satisfied. The Debtor (and Mr. O'Hare) will not suffer immediate, irreparable harm in the absence of a preliminary injunction; the balance of harms overwhelmingly favors Ringba; and upholding compliance with court orders in general is strongly in the public interest. Thus, the Debtor's and Mr. O'Hare's motion for a preliminary injunction in this Adversary Proceeding must be denied.

## BACKGROUND

### A.     The State Court Litigation

1.      On October 31, 2021, DNC and TCPA List Sanitizer, LLC (the "Debtor")[2] commenced litigation against Adam Young, Tubmanburg Limited and Ringba, LLC, in the District Court, El Paso County, Colorado (the "State Court"), in Case No. 2021CV31668 (the "State Court Litigation"). On May 18, 2022, the State Court entered a "Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets" (the "Protective Order") to allow the parties to exchange sensitive information in the case. Protective Order, **Exhibit A**. The Protective Order allowed the parties to designate documents and deposition testimony as "Highly Confidential – Attorneys' Eyes Only." Pursuant to the Protective Order, such

---

[2] The Debtor is primarily owned by Cashyew Holdings, LLC, which holds a 99% equity interest in the Debtor. The remaining ownership interests in the Debtor are held by Michael O'Hare (.50%), the Debtor's CEO, and Tanya O'Hare (.50%), the Debtor's Secretary.

information could only be shared with specific parties (such as outside counsel and staff, the Court and its personnel), *not* the public and, and importantly, not the representatives of the parties.

2.     During the COLO. R. OF CIV. P. 30(b)(6) deposition of Ringba, counsel for Ringba contemporaneously designated certain sections of the record as "Highly Confidential – Attorneys' Eyes Only." Later, counsel for the Debtor requested that the entire transcript be designated as "Highly Confidential – Attorneys' Eyes Only." Thus, each and every page of the deposition transcript was watermarked with an "Attorneys' Eyes Only" designation.

3.     On May 25, 2023, the State Court issued an Order re Forthwith Request for Emergency Hearing and terminating sanctions against the Debtor (the "Judgment"). *See* **Exhibit B**. Specifically, the State Court entered terminating sanctions against the Debtor for its concealment of evidence and recordings that went to the heart of the State Court Litigation. Among other findings, the State Court concluded that "Mr. O'Hare … completely disregarded [his] legally required discovery obligations until just recently in an attempt to increase [his] chances of prevailing at trial." *Id.* The State Court also found that Mr. O'Hare represented to the State Court and Ringba that he (and the Debtor) lacked access to certain discoverable information "when … Mr. O'Hare[] knew that that was not true." *Id.* The State Court ultimately entered an award of attorneys' fees and costs against the Debtor and in favor of Ringba. Ringba's proof of claim filed in the Debtor's Bankruptcy Case is based on this Judgment and the subsequent award of attorneys' fees and costs.

4.     The Debtor appealed the Judgment terminating the State Court Litigation to the Colorado Court of Appeals in Case No. 2024CA265. The Debtor also appealed three other orders entered by the State Court, in Colorado Court of Appeals Case No. 2023CA891. On September 19, 2024, the Colorado Court of Appeals affirmed the State Court's Judgment against the Debtor,

denying the Debtor's appeal at 2023CA891. The Colorado Court of Appeals has not yet ruled in Case No. 2024CA265. On March 12, 2025, the Debtor then filed a Petition for Writ of Certiorari with the Colorado Supreme Court in Case No. 2024SC724, as to the Colorado Court of Appeals' decision in 2023CA891. The Debtor did not obtain a supersedeas bond for any of its appeals.

**B.**     **The Debtor's Bankruptcy Case**

5.      On May 16, 2024, after appealing the Judgment, the Debtor filed for relief under Chapter 11, Subchapter V of the Bankruptcy Code (the "Bankruptcy Case"). *See* Bankr. Docket No. 1. The Debtor did not obtain a supersedeas bond pending its appeal, after the entry of the Judgment or before the bankruptcy filing.

6.      Early in the Debtor's Bankruptcy Case, Ringba filed an *Ex Parte* Motion for Order Authorizing Rule 2004 Examination of Debtor DNC and TCPA List Sanitizer, LLC and Cashyew Holding. *See* Docket No. 22. On August 28, 2024, the Debtor likewise filed an *Ex Parte* Motion for Order Authorizing Rule 2004 Examination of Creditor Ringba, LLC's Agents Adam Young and Harrison Gurvitz [*sic*] (the "Debtor 2004 Motion"). *See* Bankr. Docket No. 135.

7.      The next day, Ringba filed an Unopposed Emergency Motion to Seal the 2004 Motion (the "Seal Motion"). *See* Bankr. Docket No. 137. The basis for the Seal Motion was Mr. O'Hare's purposeful disclosure of matters that were designated as "Highly Confidential – Attorneys' Eyes Only," pursuant to the Protective Order. On the same day, the Court entered an Order sealing the Debtor 2004 Motion (Bankr. Docket No. 138) and, thereafter, on August 30, 2024, entered an Order denying the Debtor 2004 Motion in its entirety, finding that, "[h]ere, Debtor has not shown the proposed examination(s) fall within the appropriate scope of FED. R. BANKR. P. 2004.". *See* Bankr. Docket No. 140 at 1.

8.      Based on Mr. O'Hare's violation of the Protective Order, on September 4, 2024, Ringba filed a Verified Motion and Affidavit for Citation for Contempt of Court in the State Court Litigation (the "Contempt Motion," which initiated the "Contempt Action"). *See* Contempt Motion, **Exhibit C.** In the Contempt Motion, Ringba seeks the State Court's enforcement of the Protective Order against Mr. O'Hare individually, including the following requested relief, which is applicable *only* to Mr. O'Hare:

> a.      Payments of reasonable costs and attorneys' fees Ringba incurred related to [the Contempt Action];

> b.      Payment of reasonable costs and attorneys' fees Ringba incurred related to sealing the Interrogatory List in the Bankruptcy Court;

> c.      Mr. O'Hare must meet with his prior attorneys and develop an affidavit of all information designated as Attorneys' Eyes Only that was shared with him. This affidavit must be provided to Ringba and filed with the Court under seal;

> d.      An affidavit from Mr. O'Hare listing every document, written communication, or recorded communication in his possession that includes reference to the Highly Confidential—Attorneys' Eyes Only information. This affidavit must be provided to Ringba and filed with the Court under seal;

> e.      An order requiring Mr. O'Hare to either destroy or provide to the Court all copies of documents, communications, and recording identified in 18(d);

> f.      An order requiring Mr. O'Hare and his prior attorney Jeffrey Cohen to sit for a deposition where Ringba will inquire into the sharing of Highly Confidential Attorneys' Eyes Only information with Mr. O'Hare. Mr. O'Hare will be responsible for the fees and costs incurred in those depositions;

> g.      An order permanently enjoining Mr. O'Hare from using or sharing the Highly Confidential – Attorneys' Eyes Only information identified by Mr. Cohen in 18(b) without prior authorization from this Court (and any such request be submitted to the Court in a filing that is filed as Suppressed or Sealed).

> h.      Any additional relief the Court determines is reasonable, just, or necessary to ensure future compliance with the Court's Orders.

Ex. C ¶ 17. The Contempt Motion does not contain any requested relief as to the Debtor.

9.      On April 3, 2025, approximately seven months after Ringba filed its Contempt Motion, the Debtor, in its Bankruptcy Case, filed a Motion to Extend Automatic Stay to Michael O'Hare in his Representative Capacity for the Debtor, concerning the Contempt Action. Bankr. Docket No. 352. On April 8, 2025, the Court summarily denied that motion "without prejudice to the filing of an adversary proceeding in compliance with applicable rules of procedure." Bankr. Docket No. 356.

10.      On April 11, 2025, the Debtor and Mr. O'Hare filed a Complaint for a Temporary Restraining Order and for Declaratory and Injunctive Relief (the "Complaint"), initiating the instant Adversary Proceeding. *See* Docket No. 1.  The Complaint includes two claims for Relief: (I) Declaration that the Automatic Stay of Section 362(a) of the Bankruptcy Code Stays any Pursuit of the Contempt Litigation Against Plaintiffs; and (II) Injunctive Relief Pursuant to 11 U.S.C. § 105(a).  *See generally* Complaint.  Distilled to its essence, the Debtor and Mr. O'Hare, through the Complaint, request that the automatic stay apply to Mr. O'Hare and this Court stay the Contempt Action against Mr. O'Hare.

11.      Contemporaneously, the Debtor and Mr. O'Hare filed a Motion of DNC and TCPA List Sanitizer, LLC and Michael O'Hare for a Temporary Restraining Order and for Declaratory and Injunctive Relief (the "Motion").  The Motion requests two forms of relief: (i) a temporary restraining order (the "TRO Motion"); (ii) preliminary and permanent injunctions enjoining Adam Young and Ringba from continuing to prosecute the State Court Contempt Litigation (the "PI Motion"); and, alternatively, (iii) a declaration that the Contempt Action is a violation of the automatic stay.  *See* Docket No. 3, Preliminary Statement. Also, on April 11, 2025, the Debtor

filed a Memorandum of Law in Support of Complaint of DNC and TCPA List Sanitizer, LLC and Michael O'Hare for a Temporary Restraining Order and for Declaratory and Injunctive Relief (the "Memorandum"). Docket No. 4.

12.     This Court summarily denied the TRO Motion in its April 14, 2025 Order, finding that the Debtor and Mr. O'Hare "[had] not set forth specific facts clearly showing an immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition." The Court also noted numerous other procedural defects that precluded the requested relief. *See* Docket No. 8.

13.     On April 23, 2025, Ringba filed its Unopposed Motion for Extension of Time to Respond to (i) Motion of DNC and TCPA List Sanitizer, LLC and Michael O'Hare for a Temporary Restraining Oder and for Declaratory and Injunctive Relief; and (ii) Complaint for Temporary Restraining Order and for Declaratory and Injunctive Relief (the "Extension Motion"). *See* Docket No. 11.  The Court granted the Extension Motion, providing that Ringba may file a response to the PI Motion on or before May 5, 2025, and may file a responsive pleading to the Complaint on or before May 14, 2025.  *See* Docket No. 12.

## ARGUMENT

### A.     Applicable Legal Authority Applying to Preliminary Injunction Motions

14.     Generally, "[t]o prevail on a preliminary injunction motion, the movant bears the burden of showing that: (1) they are likely to succeed on the merits; (2) they will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs the injury the injunction would cause the opposing party; and (4) the injunction would not adversely affect the public interest." *Empower Annuity Ins. Co. of Am. v. Empower Fin., Inc*., No. 23-CV-00062-CNS-SKC, 2023 WL 5938831, at *2 (D. Colo. Sept. 12, 2023) (citing *Beltronics USA, Inc. v. Midwest*

*Inventory Distribution*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)). "An injunction can issue only if each factor is established." *Id.* (quoting *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quotations omitted).

15.     "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Nutritional Therapy Association, Inc., v. Rithmic Wellness, LLC*, No. 124CV00478CNSSBP, 2024 WL 1073217, at *3 (D. Colo. Mar. 12, 2024) (quoting *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018)) (quotations omitted). Because it is "an extraordinary remedy," a preliminary injunction is "the exception rather than the rule." *Fox Factory, Inc. v. SRAM, LLC*, No. 23-CV-00313-RM-KLM, 2023 WL 4562546, at *2 (D. Colo. July 17, 2023) (quoting *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019)) (quotations omitted). In this case, in addressing the four customary factors for a preliminary injunction, it is clear that the requested relief cannot be granted.

**B.      The Automatic Stay Does Not Apply to Michael O'Hare and the Debtor Has Not Demonstrated a Strong Likelihood of Success on the Merits**

16.     The automatic stay cannot extend to  non-debtor Mr. O'Hare and therefore the PI Motion must be denied. To warrant issuance of preliminary injunction, a plaintiff must first demonstrate that it has a "strong likelihood of success on the merits." *McDonnell v. City & Cnty. of Denver*, 878 F.3d 1247, 1252–53 (10th Cir. 2018); *see also In re Content Distrib., Inc.,* No. 10-34729 MER, 2011 WL 5244900, at *4 (Bankr. D. Colo. Nov. 2, 2011) ("To obtain preliminary injunctive relief … a movant must show … the movant is likely to succeed on the merits at trial[.]"); *In re Rare, LLC*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003) ("To receive a preliminary injunction, the plaintiff must establish … a substantial likelihood of success on the merits of the case[.]").

17.     The PI Motion must be denied because the Debtor's claims requesting to extend the automatic stay to Mr. O'Hare, for his contemptuous post-petition misconduct, and to declare Ringba in violation of the automatic stay, are completely meritless. Specifically, the Debtor and Mr. O'Hare do not have a strong likelihood of success on the merits of their claims for at least four reasons: (i) the automatic stay under 11 U.S.C. § 362(a) does not apply to post-petition claims, such as the Contempt Action; (ii) the automatic stay does not apply to the Contempt Action; (iii) even if the automatic stay applied to post-petition contempt actions, the automatic stay does not and cannot extend to a non-debtor third party, such as Mr. O'Hare; and (iv) the Debtor does not have a reasonable likelihood of a successful reorganization, to the extent that consideration applies in the Tenth Circuit. [3]

### i.     The Bankruptcy Automatic Stay Does Not Apply to Post-Petition Actions Such as the Contempt Action

18.     The Debtor is not likely to succeed on the merits of its claims because the Contempt Action arises from post-petition, non-debtor conduct and therefore is not subject to the automatic stay. As set forth in the Bankruptcy Code, actions that arise post-petition are exempt from the automatic stay. 11 U.S.C. § 362(a)(1) (stating that the filing of a bankruptcy petition stays "the

---

[3] The Debtor and Mr. O'Hare argue that, to determine the PI Motion, this Court should ignore the substance of their meritless Complaint, and instead focus on the Debtor's likelihood of reorganization. Memo. at 18, 20. For this contention, they cite a single case from 1997, out of the Bankruptcy Court for the Southern District of New York. *See id.*; *see also In re Health Care Org.*, 210 B.R. 228, 232–33 (S.D.N.Y. 1997). This argument should be rejected for multiple reason. First, the Debtor fails to cite any Tenth Circuit case law suggesting this Court should ignore the four factors routinely applied where a movant seeks a preliminary injunction. Second, as discussed below, the application of this out-of-circuit standard is completely inappropriate here where the automatic stay clearly does not apply to the post-petition Contempt Action. Third, a primary consideration in *Health Care Org.* was whether the action sought to be stayed would "adversely effect[]" the debtor's bankruptcy estate. *Id.* There is no such concern here because, as explained below, the Contempt Action seeks relief only against Mr. O'Hare, and the Debtor has no (or at most, nominal) indemnification obligations to Mr. O'Hare (*i.e.*, because Mr. O'Hare was not operating within the "ordinary course of business" when he disclosed Ringba's confidential information, and Ringba, in any event, seeks only fees and costs from Mr. O'Hare, not a money judgment). Finally, as explained below, even if this out-of-circuit standard applied (which it should not), the PI Motion should be denied because the Debtor in the underlying Bankruptcy Case does not have a reasonable likelihood of successful reorganization. (See the multiple objections and joinders to objections to confirmation of the Plan, at Docket Nos. 345 (United States Trustee); 348 (Subchapter V Trustee); 355 (Cohen, LLC); 357 (GLegal, LLC); 359 (Ringba)).

commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor **that was or could have been commenced before the commencement of the case under this title**, or to recover a claim against the debtor **that arose before the commencement of the case** under this title" (emphasis added)). Stated differently, "[t]he stay is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed. It does not include actions arising post-petition." *Garrett v. Cook*, 652 F.3d 1249, 1255 (10th Cir. 2011) (quoting *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991)) (holding that motion for attorneys' fees and costs against debtor was not subject to automatic stay because fees arose out of debtor's "unfounded" *post-petition* attempt to remove litigation to federal court); *see In re Wajcman*, No. 10-22206, 2011 WL 4915007, at *2 (Bankr. D. Kan. Oct. 17, 2011) ("Actions on claims that arise after the commencement of the [bankruptcy] case are not stayed." (quoting 3 *Collier on Bankruptcy*, ¶ 362.03[3](c) (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2011))). Therefore, post-petition actions that could not have been initiated prior to the bankruptcy filing, whether against the debtor or a non-debtor, are exempt from the automatic stay.

19.     Ringba's Contempt Action arises out of Mr. O'Hare's separate post-petition conduct and is therefore not subject to the automatic stay under 11 U.S.C. § 362(a). The Debtor initiated this Bankruptcy Case on May 16, 2024. *See* Bankr. Docket No. 1. Then, months later, on August 28, 2024, the Debtor 2004 Motion was filed in this Bankruptcy Case, seeking relief under FED. R. BANKR. P. 2004. *See* Bankr. Docket Nos. 135, 135-1. Attached to the Debtor 2004 Motion was a List of Interrogatories (at Docket No. 135-1) that disclosed information that was designated as "Highly Confidential – Attorneys' Eyes Only" in the State Court Litigation. Mr. O'Hare (impermissibly) possessed this acknowledge, was aware of his confidentiality obligations, but

nonetheless decided to publicly disclose the highly confidential information in the Debtor 2004 Motion. This disclosure by Mr. O'Hare was a blatant post-petition violation of the Protective Order and formed the basis of Ringba's post-petition Contempt Action *against Mr. O'Hare*.

20.     In short, Mr. O'Hare did not violate the Protective Order until *after* the petition date. Accordingly, the claim did not arise until after the petition date and Ringba could not have initiated the Contempt Action prior to the Debtor's Bankruptcy Case. *See* 11 U.S.C. § 362(a)(1). Thus, it is of no moment that the Protective Order was entered and the State Court Litigation that was commenced prior to the petition date of the Debtor's Bankruptcy Case. Ringba's Contempt Action is based on post-petition behavior by a non-debtor and is not subject to the automatic stay. For this reason alone, the PI Motion must be denied.[4]

### ii.   The Bankruptcy Automatic Stay Does Not Apply to the Contempt Action

21.     Additionally, the automatic stay of 11 U.S.C. § 362(a) does not apply to contempt proceedings, such as the Contempt Action. Courts recognize that certain types of contempt proceedings, *against either debtors or non-debtors*, are <u>not</u> subject to the bankruptcy automatic stay. Specifically, "if the purpose of the contempt order is to **uphold the dignity of the court**, the civil contempt order may be excepted from the automatic stay of § 362(a)." *Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*, 675 F. Supp. 2d 1016, 1027 (D. Haw. 2009) (emphasis added); *see also ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 803 (10th Cir. 2013) (observing that contempt order did not violate automatic stay "so long as its 'main purpose [was] to punish a contemnor and uphold the dignity of the court'" (quoting *Kukui Gardens*, 675 F. Supp. 2d at 1026–27)); *US Sprint Commc'ns Co. v. Buscher*, 89 B.R. 154, 156–57 (D. Kan. 1988) (analyzing case law distinguishing between contempt citation to "uphold dignity of the court" versus one to

---

[4] The post-petition "exception" to the automatic stay under 11 U.S.C. § 362(a) applies to claims against either debtors or non-debtors. *See, e.g. Garrett*, 652 F.3d at 1255.

"enforce payment of a judgment"); *In re Burgess*, 503 B.R. 154, 157 (Bankr. M.D. Fla. 2014) ("[C]ourts have declined to read section 362(a) in a way that precludes post-petition proceedings to enjoin disobedient conduct.").

22.     Moreover, 11 U.S.C. § 362(b)(4) specifically **exempts** from the automatic stay, "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power," which courts have held applies to the judiciary's enforcement of a contempt order brought by a litigant. 11 U.S.C. § 362(b)(4); *see U.S. v. Coulton,* 594 F. App'x. 563, 566 (11th Cir. 2014) ("Section 362(b)(4) applies in this action because the judiciary action through [the litigant] as a surrogate, in effect 'brought' the contempt proceeding."); *see also In re Michael J. Roberts, Sr.*, Case No. 22-10521-JGR (May 13, 2022), Docket No. 161 ("Pursuant to 11 U.S.C. § 362(b)(4), the automatic stay does not apply to the Denver District Court's contempt and enforcement proceedings against Michael Roberts, Sr. in Case No. 2015CV31828, including but not limited to the enforcement of the court's … Contempt Order of January 6, 2020[.]").

23.     In contrast, a contempt action initiated to "enforce a money judgment" or pursue any other "collection motive," would be subject to the automatic stay. *See Kukui Gardens*, 675 F. Supp. 2d at 1027 (quoting *In re Lincoln*, 264 B.R. 370, 374 (Bankr. E.D. Pa. 2001)). However, importantly, the mere fact that a contempt judgment may impose a financial obligation does not automatically invoke the bankruptcy stay and immunize the violating party. *See Walsh v. Paragon Contractors Corp.*, No. 2:06-CV-700-TC, 2022 WL 1224975, at *5 (D. Utah Apr. 26, 2022); *see also In re Gedeon*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983) ("A civil fine, meant to coerce a defendant to obey a court order, would seem to be imposed to uphold the dignity of the court, even though the fine is payable to a plaintiff."). This exemption to the automatic stay applies to actions

and orders against either non-debtors or debtors in bankruptcy. *See, e.g., Gedeon*, 31 B.R. at 946 (allowing petition to proceed for contempt fines, attorneys' fees, and costs, against debtor in bankruptcy); *ClearOne*, 509 F. App'x at 803 (holding contempt proceedings could continue against debtor).

24.     Ringba's Contempt Action is against non-debtor Mr. O'Hare and serves the purpose of upholding the dignity of the State Court, not to "enforce payment of a judgment." *See Buscher*, 89 B.R. at 156–57. As set forth in the Contempt Motion, Ringba seeks to enforce the Protective Order entered by the State Court; to require Mr. O'Hare to describe the scope of the highly confidential information inappropriately shared with him; to enjoin Mr. O'Hare from using or sharing additional confidential information in violation of the Protective Order; and an award of reasonable costs and attorneys' fees associated with the Contempt Action. *See* Contempt Motion, Ex. A at 4–5. In other words, through the Contempt Action, Ringba is <u>not</u> seeking to collect on or enforce a money judgment against Mr. O'Hare. *See id.* Thus, the Contempt Action falls into the first category of contempt actions and orders that are exempt from the automatic stay under 11 U.S.C. § 362(b)(4) and under applicable case law: those that are intended to enforce an existing order and uphold the dignity of the court—in this case, the Protective Order and State Court. *See* 11 U.S.C. § 362(b)(4); *see also Coulton,* 594 F. App'x. at 566. For this separate and additional reason, the automatic stay does not apply to the Contempt Action and the Motion must therefore be denied.

### iii.  The Automatic Stay Does Not Extend to Non-Debtor Third Parties, Including Non-Debtor Members of a Debtor Limited Liability Company

25.     Generally, the automatic stay afforded to debtors in bankruptcy does not apply to non-debtors, whether or not the non-debtor is related to or affiliated with the debtor. Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition stays "[t]he commencement or continuation . .

. of a judicial, administrative, or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim **against the debtor** that arose before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 362(a)(1) (emphasis added). Pursuant to applicable legal authority from the Tenth Circuit Court of Appeals, the bankruptcy automatic stay may extend to non-debtors only if the bankruptcy court determines a narrow exception applies:

> While § 362 extends the stay provisions of the Bankruptcy Code to the "debtor", the rule followed by this circuit and the general rule in other circuits is that the stay provision does not extend to solvent codefendants of the debtor. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (citing other circuits); *In re Metal Ctr., Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) (automatic stay does not apply where codefendant is independently liable from debtor). A narrow exception allows a stay to be imposed under section 362(a)(1) against a nonbankrupt party in "unusual situations" as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

*Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141–42 (10th Cir. 1994) (emphasis added). In short, the automatic stay afforded by the Bankruptcy Code generally "extends stay proceedings only to actions 'against the debtor[,]'" not "solvent co-defendants of the debtor" or other third parties, whether related to the debtor or not. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984); *Glob. Logistics Sols., LLC v. Ciao Grp., Inc.*, No. 14-CV-2928-WJMCBS, 2016 WL 1586425, at *3 (D. Colo. Apr. 20, 2016) ("By its plain language, the statute applies the stay only to actions or proceedings *'against the debtor.'* . . . Thus, the Tenth Circuit recognizes that, as a general rule, 'the stay provision does not extend to solvent codefendants of the debtor.'") (citations omitted) (emphasis in original) (quoting *Blodgett*, 24 F.3d at 141)); *In re Agrawal*, No. 16-11253-JDL, 2017 WL 6403066, at *2 (Bankr. W.D. Okla. Dec.

14, 2017) ("It is a black letter bankruptcy principle that 11 U.S.C. § 362(a) does not create a general, automatic stay of a creditor's right to assert claims against non-debtor parties who are related to the debtor in some fashion.").

26.     Moreover, where a party seeks to extend the automatic stay to a non-debtor, "[t]he party invoking the stay has the burden to show that it is applicable." *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 302 (Bankr. S.D. Tex. 2015); *see* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) ("Such injunctions [extending the automatic stay to non-debtors] are the exception rather than the norm, however, and generally the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor.").

27.     Likewise, the automatic stay does not generally extend to non-debtors, even if the non-debtor is "related to the debtor in some fashion." *Agrawal*, No. 16-11253-JDL, 2017 WL 6403066, at *2; *see Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."). For example, "**section 362 does not bar an action against the principal of a debtor-corporation**." *Mar. Elec. Co.*, 959 F.2d at 1205–6 (emphasis added); *see also CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32–33 (S.D.N.Y. 1990). Moreover, the automatic does not extend to non-debtor members of a limited liability company. *In re Nilhan Devs., LLC*, 622 B.R. 795, 803 (Bankr. N.D. Ga. 2020) ("[T]he automatic stay of acts 'against the debtor' is to be strictly construed. Actions as to the personal membership rights of LLC members are not actions against the LLC. Thus, **actions against LLC members, in their individual capacity, do not violate the automatic stay**." (emphasis added)). Thus, non-debtor members or managers of a debtor limited liability company are not automatically

entitled to the protections of the automatic stay. Consistent with that general rule, the automatic stay does not extend to Mr. O'Hare, in this case,

### iv. The Automatic Stay Does Not Extend to Non-Debtor Michael O'Hare

28.     Here, the automatic stay does not extend to Mr. O'Hare because he is not a Debtor in bankruptcy. Instead, Mr. O'Hare is a third-party non-debtor and no unusual circumstances justify application of the narrow exception to the general rule that the automatic stay applies only to debtors in bankruptcy. Although Mr. O'Hare is a manager of the limited liability company that owns the Debtor, this fact does not entitle him to personal protection from the Contempt Action under the automatic stay. The Debtor and Mr. O'Hare fall well short of their burden demonstrating that this case constitutes an "unusual" situation where the "narrow exception" would apply. *See Blodgett*, 24 F.3d at 141–42.

29.     Although unclear from the Memorandum, it appears the Debtor makes only two arguments as to why the automatic stay should extend to Mr. O'Hare in this case:[5] (1) Mr. O'Hare and the Debtor share an identity of interest due to the Debtor's purported indemnity obligations of Mr. O'Hare; and (2) the claims in the Contempt Action against Mr. O'Hare are in effect claims against the Debtor. Memo. at 11-14. As explained below, each of these arguments is baseless.[6]

---

[5] Notably, although mentioned in the Complaint, in the Memorandum, the Debtor and Mr. O'Hare fail to accurately explain to this Court the case law regarding extension of the automatic stay to non-debtors. For example, the Debtor partially quotes *Blodgett* and asserts that "Section 362(a)(1) **will** be imposed to stay an action" where a judgment against the non-debtor is effectively a judgment against the debtor. Memo. at 11 (emphasis added). However, the actual quote from *Blodgett* states that "[a] **narrow** exception *allows* a stay to be imposed," only in "unusual situations." *Blodgett*, 24 F.3d at 141 (emphasis added). Here, Mr. O'Hare does not qualify for the permissive and narrow exception.

[6] The Debtor and Mr. O'Hare also cite Section 362(a)(3) as a basis to extend the automatic stay to Mr. O'Hare. However, their apparent arguments pertain only to Section 362(a)(1). Section 362(a)(3) applies the automatic stay to "property of the estate[.]" Despite citing this statutory provision, the Debtor does not argue that the bankruptcy estate owns the claim in the Contempt Action. Thus, to the extent the Debtor argues the Contempt Action is property of the estate, this should also be rejected.

**1. The Debtor is Not Obligated to Indemnify Mr. O'Hare and Nominal Indemnity Does Not Justify Extension of the Automatic Stay**

30.     First, contrary to the Memorandum, the Debtor is not obligated to indemnify Mr. O'Hare for his conduct occurring outside the scope of the Debtor's ordinary course of business. In the Memorandum, the Debtor and Mr. O'Hare assert that, "[i]n Colorado, members or managers of a limited liability company are entitled to indemnification for liability incurred in the ordinary course of business or preservation of its business[.]" Memo. at 12 (citing C.R.S. § 7-80-407). However, Mr. O'Hare was *not* acting in the "ordinary course of business" when he decided to violate the Protective Order. Of course, the Debtor's business of providing lists of telephone numbers to its customers to aid them in avoiding litigation under the Telephone Communications Privacy Act, does not entail violating court orders or disclosing highly sensitive and confidential information in public forums. Indeed, this Court *denied* the Debtor 2004 Motion, finding that the "Debtor has not shown the proposed examination(s) fall within the appropriate scope of FED. R. BANKR. P. 2004.". *See* Bankr. Docket No. 140 at 1. Therefore, even if it were true that indemnification alone satisfied the narrow exception to the general rule under 11 U.S.C. § 362(a) (it does not), the Debtor's and Mr. O'Hare's argument must be rejected because Mr. O'Hare's violation of the Protective Order in the Debtor 2004 Motion was not in the "ordinary course" of the Debtor's business.

---

Similarly, the case cited by the Debtor, *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colorado, LLC*, is distinguishable. No. 11-CV-03333-WYD-KLM, 2013 WL 708493 (D. Colo. Feb. 26, 2013); *see also* Memo. at 14–15. That case concerned "fraudulent transfer claims." *Id.* at *3. The court there concluded that "[a] claim that [the debtor's] assets were fraudulently transferred by [co-defendant] O'Byrne or others would appear to be a claim that should be resolved in the bankruptcy proceeding, **as it is an asset of [the debtor]**." *Id.* (emphasis added). Here, the Debtor has no claim to the Contempt Motion and Action. There is no argument that the violation of the State Court Protective Order is an issue that "should be resolved in the bankruptcy proceeding." *Id.* Further, there is no risk that an adverse outcome for Mr. O'Hare in the Contempt Action would in any way impact the bankruptcy estate. Thus, the Debtor's and Mr. O'Hare's reliance on this case is misplaced.

31.     Further, even if Mr. O'Hare's violation of the Protective Order were somehow considered an act in the "ordinary course" of the Debtor's business (a specious argument), the argument still fails because nominal indemnification obligations do <u>not</u> satisfy the requirements for extending automatic stay to non-debtors. As noted, a bankruptcy court will only extend the automatic stay if "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). In support of this inquiry, some courts have considered the debtor's "absolute indemnity" obligations to the non-debtor (*i.e.*, in the event of a large adverse monetary judgment against the non-debtor). *See, e.g., id.; see also CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 33–34 (S.D.N.Y. 1990). However, even where the debtor is obligated to indemnify a non-debtor under certain circumstances, the bankruptcy court must assess whether indemnification will have a "**material effect**" on the debtor's reorganization efforts. *See CAE Indus.*, 116 B.R. at 33–34; *c.f. A.H. Robins Co. v. Piccinin*, 788 F.2d at 1004 (where debtor was obligated to indemnify non-debtor with respect to "thousands of … actions and claims pending");[7] *In re Uni-Marts, LLC*, 404 B.R. 767 (Bankr. D. Del. 2009) ("[T]he purpose served by extending the stay to directors and officers indemnified by the debtor must be consistent with the purpose of the stay itself, that is, to 'suspend actions that pose a serious threat to a corporate debtor's reorganization efforts.' (quoting *In re First Cent. Fin. Corp.*, 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999))). Even then, indemnity alone is not a sufficient basis to extend the automatic stay to a non-debtor. *See Algamene Bank Nederland, N.V. v. Hallwood Industries, Inc.*, 133 B.R. 176, 180 n. 3

---

[7] The Debtor cursorily cites *A.H. Robins* but fails to identify that it is entirely distinguishable from the instant matter. Unlike here, *Robins* involved absolute indemnity for "thousands" of actions that would have depleted the bankruptcy estate. The Debtor here is not obligated to indemnify Mr. O'Hare, and even then, only for nominal costs and fees.

(W.D.Pa.1991) (where the court "reject[ed] the dictum … in *A.H. Robins Co., Inc.*, 788 F.2d at 999–1000, holding a stay permissible under [11 U.S.C. § 362(a)(1)] based solely on the existence of an indemnification agreement.").

32.    Here, even if the Debtor were legally obligated to indemnify Mr. O'Hare for the Contempt Action, it would only be obligated to the extent of the attorneys' fees and costs incurred in the Contempt Action against O'Hare (and the efforts to seal the inappropriately disclosed information in this Bankruptcy Case). *See* Contempt Motion, Ex. C ¶ 17. Ringba is not otherwise seeking a monetary judgment in the Contempt Action against Mr. O'Hare (not to mention against the Debtor). Meanwhile, according to the Debtor's own projections, it will allegedly have net income of $3,115,603 over the life of its Plan.[8] *See* Docket No. 316 at 31. In comparison, the potential costs associated with the Contempt Action will be, at most, a fraction of that amount. Thus, this argument of the Debtor and Mr. O'Hare must be rejected; they do not share such an identity of interest due to any purported indemnity obligations, such that extension of the automatic stay would be justified.

### 2.    The Contempt Action is Against Mr. O'Hare, Not the Debtor

33.    Second, the Contempt Action concerns Mr. O'Hare's contemptuous behavior, not the Debtor. Despite the cherrypicked language included in the Memorandum, a simple reading of the Contempt Motion reveals that it is based on *Mr. O'Hare's* personal violation of the Protective Order. *See* Contempt Motion, Ex. C. As Mr. O'Hare and the Debtor fail to explain, Mr. O'Hare himself is obligated under the Protective Order not to disclose confidential information. The

---

[8] For the same reasons, the Debtor's and Mr. O'Hare's arguments regarding "immediate adverse economic consequences for the Debtor's estate" or that the Contempt Action would "seriously jeopardize[]" reorganization, should be rejected. Mot. at 3, 21. Ringba seeks only attorneys' fees and costs—and only such fees and costs *from Mr. O'Hare.* The Debtor would not be liable or otherwise responsible for even these small sums, and thus this argument is baseless.

Contempt Motion and Action concern <u>Mr. O'Hare's</u> misconduct and personal violation of the Protective Order. *See, e.g., Id.* ¶ 12 ("Mr. O'Hare ignored the Protective Order and made public sensitive information[.]"). Moreover, Ringba specifically "requests . . . **from Mr. O'Hare**" certain remedies (*e.g.*, to enforce the Protective Order, assess the scope of his violation, prevent further violations, and to recover fees and costs). *Id.* ¶ 17 (emphasis added). Ringba seeks only to enjoin Mr. O'Hare and to require Mr. O'Hare to detail the scope of his violation.

34.     Of course, Mr. O'Hare violated the Protective Order in this Bankruptcy Case, through the Debtor 2004 Motion filed by the Debtor. However, the mere fact that Mr. O'Hare committed his violation in this Bankruptcy Case does not overcome the fact that he individually and affirmatively chose to violate the Protective Order by disclosing his *personal* knowledge of the highly confidential information. To hold otherwise would be to elevate form over substance with respect to the violation, and to essentially inoculate an individual from his contemptuous misconduct, only because he chose to filter his violation through this Bankruptcy Case. Indeed, as this Court held in its Order denying the Debtor 2004 Motion, the proposed examinations (which included questioning on the irrelevant and Highly Confidential – Attorneys' Eyes Only information disclosed by Mr. O'Hare) were not "within the appropriate scope of Fed. R. Bank. P. 2004." Bankr. Docket No. 140. Thus, even the ostensibly ordinary Debtor 2004 Motion was, in fact, lacking any legitimate purpose related to the Bankruptcy Case, and instead was simply a vehicle for Mr. O'Hare to harass Ringba and violate the Protective Order. As such, any argument that Mr. O'Hare is protected in the Contempt Action by virtue of the fact that his violation occurred in the Debtor 2004 Motion, must be rejected.

35.     Likewise, the Debtor's and Mr. O'Hare's conclusory arguments that "a judgment against the [*sic*] Mr. O'Hare will in effect be a judgment or finding against the Debtor" should also

be rejected. Memo. at 12–13. Far from being "predicated entirely on a theory of the Debtor's liability," the Contempt Action concerns only Mr. O'Hare's *personal* violation of the Protective Order; nothing is "predicated" on first finding the Debtor liable. *Id.* at 13. This misrepresentation of the nature of relief sought by Ringba is plainly contradicted by the Contempt Motion itself. *See* Contempt Motion, Ex. A ¶ 17. Thus, the Debtor and Mr. O'Hare do not share such an identity of interest that the narrow exception to the general rule regarding the automatic stay should apply here. The Motion should be denied because the Debtor does not have a strong likelihood of success the merits.[9]

### v.  The Debtor Does Not Have a Reasonable Likelihood of Successful Reorganization

36.    Finally, even if this Court were inclined to adopt the purported out-of-circuit standard cited by the Debtor and Mr. O'Hare, the Debtor does not have a "reasonable likelihood of successful reorganization." *See* Memo. at 19; *see also supra* note 3. In its three-sentence analysis, the Debtor argues that it can "easily demonstrate a reasonable likelihood of a successful reorganization," citing that it "is diligently pursuing efforts to formulate and effectuate a plan of reorganization[.]" Memo. at 20. Quite the opposite, the Debtor has engaged in rampant bad faith

---

[9] The case law cited by the Debtor is also entirely distinguishable from the facts here. For example, in *Crocs,* there was "entwinement" between the debtor and its codefendants, because "[t]he same claims [were] asserted against both [the debtor and non-debtor]," and the two had been "operating largely as a single entity in their defense of the lawsuit." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-CV-00605-PAB-KMT, 2018 WL 11413994, at *1 (D. Colo. Mar. 19, 2018). Without the debtor, the litigation would have had to "proceed in a piecemeal fashion." *Id.*

That is not the case here. The Contempt Action is against Mr. O'Hare, not the Debtor, thus there are no claims against the Debtor, not to mention the "same claims." The Contempt Action concerns only Mr. O'Hare and thus the Contempt Action can and will be fully adjudicated without the Debtor. *Crocs* is thus entirely inapplicable here.

Likewise, unlike in *Queenie*, there will be no adverse economic consequences for the Debtor's estate, because the Debtor is not obligated to indemnify Mr. O'Hare for his actions outside the ordinary course of business (and even then, such costs and fees would be nominal and would not jeopardize the bankruptcy estate). *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

misconduct in this Bankruptcy Case and Debtor's third[10] proposed amended plan contains fatal flaws to the plan and this Bankruptcy Case. The Debtor is not likely to successfully reorganize.

37.     As discussed in Ringba's Objection to Debtor's Fourth Amended Sub-Chapter V Plan of Reorganization Dated February 26, 2025[11] (the "Plan," at Bankr. Docket No. 316), and in prior briefing, including Ringba's Motion to Convert the Bankruptcy Case to a Chapter 7 Case (at Bankr. Docket No. 151), the Debtor (and Mr. O'Hare) have engaged in improper conduct since the inception of this Bankruptcy Case, including but not limited to:

a.   making various and substantial unexplained cash payments to insiders, including paying Cashyew Holding, LLC (wholly owned by the O'Hares) a sum of $50,000 per month as a "management fee," and separately and directly paying the O'Hares $40,000 per month (see, *e.g.*, Docket Nos. 55 ¶ 15, 91, 91-1, 91-2, 130, 130-1);

b.   dually attempting to have Cashyew (and therefore the O'Hares) paid through a motion to assume a management agreement (which would only apply to pre-petition contracts), and then simultaneously seeking administrative expenses related to the same purported agreement (which would only apply to post-position contracts) (see Docket Nos. 58, 302);

c.   failing to fully comply with discovery obligations by providing only a small amount of requested information in response to discovery requests (see Docket No. 22);

d.   making other unauthorized post-petition transfers to favored creditors, outside of the bankruptcy process and without court authorization or approval (*see* Docket Nos. 120 ¶ 5; 115; 316 at 8);

---

[10] The Debtor refers to its latest plan as the "Fourth Amended Sub-Chapter V Plan of Reorganization." Docket No. 316. However, this is actually the Debtor's third proposed plan.

[11] Ringba's Objection was submitted at Bankruptcy Docket No. 359.

e.  submitting deficient schedules (see Docket No. 1); and

f.  as relevant here, Mr. O'Hare's disclosing "Highly Confidential – Attorneys' Eyes Only" information in the Debtor 2004 Motion, to Ringba's significant harm. *See* Bankr. Docket Nos. 135, 135-1.

38.     Additionally, as raised by Ringba in its Objection to the proposed Plan, there are myriad of other substantial concerns that will jeopardize the Debtor's likelihood of reorganization. *See generally* Docket No. 359. These substantial objections include, but are not limited to: (i) the Plan being proposed in bad faith and to avoid funding a supersedeas bond pending its appeal of Ringba's judgment; (ii) the Plan proposes to significantly and purposely delay payment to its two major unsecured creditors; (iii) the Plan and this Bankruptcy Case represent a two-party dispute between the Debtor and Ringba; (iv) the Debtor proposes to pay only a percentage of the claims owed to unsecured creditors; and (v) the proposed Plan is not feasible.

39.     Finally, as noted above, four other parties (the United States Trustee, Subchapter V Trustee, Cohen, LLC, and GLegal, LLC) have also objected to the Plan (or joined objections). Thus, the Debtor is unlikely to confirm a plan and to successfully reorganize. For this additional reason, the preliminary injunction Motion should be denied.

**C.    The Debtor Cannot Satisfy the Remaining Elements Required for a Preliminary Injunction**

40.     Because the Debtor and Mr. O'Hare do not have a strong likelihood of success on the merits (indeed, their claims are completely meritless), the PI Motion must be denied. However, as set forth below, the PI Motion is also fatally flawed because it fails to satisfy any of the remaining elements required for issuance for a preliminary injunction.

### i. The Debtor Has Not Demonstrated Irreparable Harm

41.     The Debtor's and Mr. O'Hare's PI Motion should be denied because they have not, and cannot, demonstrate irreparable harm. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Empower*, 2023 WL 5938831, at *2 (quoting *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005)). To be "irreparable," the harm must be a type that is incapable of compensation with money. *Empower*, 2023 WL 5938831, at *2 ("To establish probable irreparable harm, the movant must demonstrate a significant risk that [it] will experience harm that cannot be compensated after the fact by money damages." (internal quotations omitted)). "Economic loss does not typically constitute irreparable harm, as economic loss is fully compensable after the fact by money damages." *Gunnison Cnty. Stockgrowers' Ass'n, Inc. v. U.S. Fish & Wildlife Serv.*, No. 1:23-CV-3258, 2023 WL 8702078, at *6 (D. Colo. Dec. 15, 2023).

42.     Additionally, the harm—if irreparable—must also be more than serious or substantial. *Empower*, 2023 WL 5938831, at *2 ("Irreparable harm is more than merely serious or substantial harm."); *Springer v. Seventh Jud. District. Ct.*, No. 1:23-CV-0499-MISJMR, 2024 WL 22085, at *10 (D. N.M. Jan. 2, 2024) ("Irreparable harm is not harm that is merely serious or substantial." (internal quotations omitted and emphasis in original)). Finally, there must be a substantial degree of "imminence" to that serious or substantial irreparable harm. *Empower*, 2023 WL 5938831, at *2 ("[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.").

43.     Here, the Debtor and Mr. O'Hare fail to satisfy the difficult burden to demonstrate that they face immediate and irreparable harm. Their only arguments in furtherance of this element

is that, as argued above, the Debtor's reorganization efforts will be "negatively impacted" by the Contempt Action, due to the Debtor's alleged obligations to indemnify Michael O'Hare, and because "Ringba's claim of wrongdoing is directed against **TCPA**." Memo. at 19 (emphasis in original). However, as explained, the Debtor is not obligated to indemnify Mr. O'Hare for misconduct outside the ordinary course of business; Mr. O'Hare's violation of the Protective Order and disclosure of highly confidential information is not related to the ordinary carrying out of the Debtor's business. Indeed, this Court denied the Debtor 2004 Motion (containing the improper disclosure) as being outside the scope of the purpose of such examinations.

44.     Further, even if there were indemnification obligations, such monetary obligations would be minimal; Ringba seeks only costs and fees, not a monetary judgment. The non-monetary relief that Ringba seeks is far from irreparable and instead requires Mr. O'Hare to undertake minimal remedial steps, such as documenting the scope of information inappropriately disclosed and refraining from additional, ongoing violations of the Protective Order. Contempt Motion, Ex. C ¶ 17.

45.     Finally, the notion that the Contempt Action "is directed" at the Debtor is plainly contradicted by the Contempt Motion itself. *See id*. Although Mr. O'Hare committed his violation of the Protective Order during this Bankruptcy Case, the Contempt Action concerns his personal misconduct and is thus aimed at preventing and remedying *Mr. O'Hare's* violations. Ringba's requested relief, even if granted in full, would and could enjoin and obligate <u>only</u> Mr. O'Hare, not the Debtor itself.[12] *See id.* ¶ 17. Thus, the Debtor has failed to demonstrate "irreparable" harm.

---

[12] Of course, the Debtor is also (already) obligated not to disclose confidential information, per the State Court Protective Order.

### ii. The Balance of Harms Strongly Favors Ringba

46.     Additionally, the balance of harms strongly favors Ringba and denial of the PI Motion. "To be entitled to a preliminary injunction, the movant has the burden of showing that the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction." *Rithmic Wellness*, *LLC*, 2024 WL 1073217, at *6. A movant's "theoretical" injuries are insufficient. *See Vendr, Inc. v. Tropic Techs., Inc.*, No. 2:23-CV-165-DAK-DAO, 2023 WL 3851838, at *11 (D. Utah June 6, 2023) (finding that balance did not weigh in favor of injunction where "[t]he alleged injuries [the movant] describes in its motion are theoretical at this point").

47.     In this case, while the harm to the Debtor is nonexistent, the harm to Ringba is significant. The information disclosed by Mr. O'Hare, in violation of the existing Protective Order, is damaging to Ringba's business reputation. It was for this very reason that the State Court determined the same should be subject to the extremely high confidentiality designation, "Highly Confidential – Attorneys' Eyes Only." In turn, the harm to the Debtor of allowing the Contempt Action to proceed is nonexistent; the Debtor will not be liable if the State Court rules favorably on Ringba's Contempt Motion. Further, the "harm" to Mr. O'Hare if the Contempt Motion is granted would be minimal, only requiring him to comply with the Protective Order he was already obligated to comply with and to remedy his prior violations, including by accounting for this scope of his violation through an affidavit and reimbursement of Ringba's attorneys' fees and costs for the Contempt Action. This relief, requiring Mr. O'Hare merely to cover costs and fees and to identify the scope of his violation of the Protective Order, does not outweigh the ongoing and significant harm to Ringba resulting from the illegal disclosure of its highly confidential information. Thus, the Debtor has failed to satisfy the "balance of harms" element required for the imposition of a preliminary injunction.

### iii.  A Preliminary Injunction Would Not be in the Public Interest

48.     Finally, the public interest does not support imposition of a preliminary injunction in this instance where an injunction would, in effect, permit Mr. O'Hare to continue ignoring the State Court's Protective Order. There is a strong public interest in the enforcement of existing court orders, particularly those that protect highly confidential and sensitive information about a litigant. Moreover, there is a strong public interest in permitting a litigant to proceed with its "day in court." In comparison, the Debtor and Mr. O'Hare cannot contend that there is a public interest in permitting a member or manager of a limited liability company to use the corporate form as a shield against the consequences of his personal violation of another court's orders. Further, Mr. O'Hare is *not* in bankruptcy and thus, although he seeks all the benefits of the protections of bankruptcy, *i.e.*, the use of the automatic stay, he is subject to none of the requirements, *e.g.,* this Court's scrutiny of his finances and dealings. This Court should reject Mr. O'Hare's attempts to invoke the protections of the bankruptcy afforded to the Debtor alone, not Mr. O'Hare for his personal liability and misconduct. As discussed at length, the Contempt Action poses no threat to the Debtor's reorganization efforts, which are unlikely to succeed irrespective of the outcome of that proceeding. Thus, the PI Motion should be denied.

WHEREFORE, Adam Young and Ringba, LLC respectfully request that the Court deny the Motion of DNC and TCPA List Sanitizer, LLC and Michael O'Hare for a Temporary Restraining Order and for Declaratory and Injunctive Relief filed on April 11, 2025, and requests such other and further relief as the Court deems just and proper.

Dated this 5th day of May, 2025.

Respectfully submitted,

WOMBLE BOND DICKINSON(US) LLP

By: */s/ Chad S. Caby*
Chad S. Caby, No. 30927
S. Wilson Collins, No. 59504
1601 19th Street, Suite 1000
Denver, CO  80202
Telephone: 303.623.9000
Email: Chad.Caby@wbd-us.com
          Wilson.Collins@wbd-us.com

*Attorneys for Defendants Adam Young and*
*Ringba, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 5, 2025, the foregoing **OBJECTION TO MOTION OF DNC AND TCPA LIST SANITIZER, LLC AND MICHAEL O'HARE FOR A TEMPORARY RESTRAINING ORDER AND FOR DECLARATORY AND INJUNCTIVE RELIEF FILED BY DEFENDANTS** was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1, which action caused automatic electronic notice of such filing upon all parties in interest in this matter as follows:

Aaron A. Garber, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 W. Main St., Ste. 200
Littleton, CO 80120
Via: CM/ECF

*and*

Benjamin J. Woodruff, Esq.
Jason R. Wareham, Esq.
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Via: CM/ECF

*Counsel for Plaintiff Michael O'Hare*

<u>*s/ Jennifer Eastin*</u>
Of: Womble Bond Dickinson (US) LLP

# EXHIBIT A

DISTRICT COURT, EL PASO COUNTY STATE OF COLORADO
270 Tejon Street, Colorado Springs, CO 80903

**TCPA LITIGATOR LIST**

Plaintiff, v.

**ADAM YOUNG**, an individual, **TUBMANBURG LIMITED**, a Bahamas corporation a/k/a Ringba, **RINGBA, LLC** a Delaware limited liability company.

Defendants.

DATE FILED
May 18, 2022 3:34 PM
CASE NUMBER: 2021CV31668

Case No.: 21 CV 31668

Attorneys for Plaintiff:

Gary Tucker, Esq.
501 S. Cherry Creek Street Eleventh Floor, 224
Denver, Colorado 80246 (720) 939-1601
GTucker@Glegal.us

**STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS**

## 1.    PURPOSE AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.4, below, that this Stipulated Protective Order does not entitle them to file confidential information

1

under seal; C.R.C.P. 121, ¶ 1- 5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. **DEFINITIONS**

2.1     <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2     <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that is in the possession of a Designating Party who believes in good faith that such Documents, Testimony, or Information is entitled to confidential treatment under applicable law.

2.3     <u>Counsel (without qualifier)</u>: Outside Counsel of Record and Designated House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" information in this matter, (as well as their support staff).

2.4     <u>Designating Party</u>: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", "HIGHLY CONFIDENTIAL – SOURCE CODE".

2.5     <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's

competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.8     "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9     House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11    Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12    Party: any party to this action, including all its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

3

2.14    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY,"or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.16    Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party.

## 3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

## 4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearing, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

### 5.   **DESIGNATING PROTECTED MATERIAL**

5.1   <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.


5.2   <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery

Material that qualifies for protection under this Order must be clearly so designated  1 before the material is disclosed or produced.

5.2 <u>Designation in conformity with this Order requires</u>:

(a) for information in documentary form (e.g., paper or electronic documents, but

excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY "or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents, it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it

appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually

designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE". If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

(d)For purposes of information produced by a Party that is in non-tangible form, (i.e. electronic recordings, videos, etc), the Designating Party shall provide a Dropbox or other electronic storage link to the Receiving Party that shall contain the information in a folder marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".  The Designating Party shall simultaneously provide a log to the Receiving Party detailing, with as much specificity as possible, the electronic information contained in the marked folder.  The Designating Party may restrict download capabilities as well as require access logs, if possible.   5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## 6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party shall file and serve a motion to remove the confidential designation under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Challenging Party to

make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the challenge to confidential designation for each challenged designation.

The burden of persuasion in any such challenge proceeding shall be on the Challenging Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

### 7.   <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1   <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2   <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that

is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel.

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or

"HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

[Subsection (b) intentionally deleted by the Parties]

(c) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed.

(d) the court and its personnel.

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4 <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.</u>

[Subsection(a)(1) intentionally deleted by the Parties]

(a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(c) first must make a

written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition,

any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

### 8.    **SOURCE CODE**

(a)    To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)    Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information [Optional: including the Prosecution Bar set forth in Paragraph 8], and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4, with the exception of Designated House Counsel.

(c)    Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location. The source code shall be made available for inspection on a secured

computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide all such source code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given

15

to or left with a court reporter or any other unauthorized individual.

### 9. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

### 10.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY "or "HIGHLY CONFIDENTIAL – SOURCE CODE". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.     make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the

17

burden and expense of seeking protection in this court of its Protected Material.

## 11.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.   If an unauthorized disclosure occurs by reason of the Receiving Party's willful misconduct, the Receiving Party may be subject to sanctions.

## 12.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in C.R.C.P. 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

## 13.    MISCELLANEOUS

13.1   Right to Further Relief. Nothing in this Order abridges the right of any person to

seek its modification by the court in the future.

    13.2   <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

    13.3   <u>Export Control</u>. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

    13.4   <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with C.R.C.P. 121, ¶ 1- 5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to C.R.C.P. 121, ¶ 1- 5 a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to; C.R.C.P. 121, ¶ 1- 5 is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to C.R.C.P. 121, ¶ 1- 5 unless otherwise instructed by the court.

## 14. **FINAL DISPOSITION**

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel is entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: ___May 15, 2022__

/s/ Gary Tucker
Attorneys for Plaintiff
Gary Tucker, Esq.
Glegal, LLC
501 S. Cherry Creek Street
Eleventh Floor, 224

Denver, Colorado 80246

DATED: May 17, 2022

/s/ Stacy D. Stein
Attorneys for Defendant
Stacy D. Stein, #41338
W. Clayton Galloway, #54938
Mountain Peak Law Group, PC
P.O. Box 441365
Aurora, CO 80044-1365

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____May 18, 2022_____     _____

District Court Judge

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of _____ **[insert formal name of the case and the number and initials assigned to it by the court]**. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the District Court El Paso County, Colorado for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my Colorado agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
                         [printed name]

Signature: _____
                         [signature]


W:\Working\07212\01\W0470957.DOCX

# EXHIBIT B

| DISTRICT COURT, EL PASO COUNTY, COLORADO | |
|---|---|
| Court Address: | |
| 270 S. TEJON, COLORADO SPRINGS, CO, 80903 | DATE FILED: May 25, 2023 6:54 AM<br>FILING ID: E2402875CB668<br>CASE NUMBER: 2023CA891 |
| **Plaintiff(s)** TCPA LITIGATOR LIST | |
| v. | |
| **Defendant(s)** RINGBA LLC et al. | |
| | ⚠ COURT USE ONLY ⚠ |
| | Case Number: 2021CV31668 |
| | Division: 22          Courtroom: |
| **Order:Proposed Order re  Forthwith Request for Emergency Hearing** | |

The motion/proposed order attached hereto: ACTION TAKEN.

I have reviewed all pleadings and exhibits filed as of the time of this order, and I have considered the testimony presented at the hearing yesterday.

Defendants renew their motion to terminate the case based on yet more new disclosures, including a screenshot of data in plaintiff's possession plainly showing that Mr. Young had permission to download the list of phone numbers that he downloaded on April 5, 2023. Exhibit 2 to Defendants' reply brief.

I find by a preponderance of the evidence that this data compilation was generated on April 5, 2020 and has been easily accessible by plaintiff since that time. Until after my April 25th, 2023 order imposing sanctions, plaintiff had insisted that there was no such data compilation to show that Mr. Young actually had permission to download the list.

Yesterday, Mr. O'Hare acknowledged that all along (i.e. since April 5, 2020), he and his programmer, Mr. Malosev, have indeed had access to the "back end" of the original website. The court finds that since the end of 2022 defendants have requested access to the back end. The court finds that when plaintiff responded to the requests that it had no such information, its principal, Mr. O'Hare, knew that that was not true.

Plaintiff insists that all defendants had to do was ask for access to the back-end of the website using the right language and they would have had access to all of this information. As part of this argument, plaintiff asserts that defendants may have requested things similar to this information but didn't quite use the right words to make clear to plaintiff that that access to the back end is what defendants wanted.

The court finds that from the beginning of discovery requests, defendants have used broad and all-inclusive terminology to make clear to plaintiff what they were seeking. The court finds that all of the disclosures by plaintiff in the last three weeks should have been turned over in response to the initial requests for production based on those broad requests. More important and much more broadly, plaintiff should have disclosed <u>all</u> of the database that was accessible through the back end of the original website and not just taken a handful of screenshots of that database on the eve of trial.

The court found everything Dr. Gianturco testified to yesterday credible. The court finds based on his testimony that the Exhibit 2 screenshot was indeed a "smoking gun" and that had that exhibit been produced when first requested by defendants, the parties would immediately have turned their attention to plaintiff's backup theory that Mr. Young, in allegedly checking the Terms and Conditions box, explicitly agreed that he would not share the list with anyone else.

It was during Mr. Malosev's testimony at the April 2023 hearing that it became clear to the court that there was a good chance that there was far more evidence in this case than plaintiff had disclosed. Confronted by the fact that Dr. Gianturco was able to download the full list from the website recreation without agreeing to any terms and conditions, Mr. Malosev, while testifying, accessed data that had existed since April 5, 2020 in an attempt to show Mr. Young had not done what Dr. Gianturco had done. The court finds that this live display by Mr. Malosev showed everyone in the courtroom, including plaintiff's counsel, that there was likely far more such data in the case that plaintiff had not disclosed.

The court finds that after the April 2023 hearing, plaintiff's counsel followed up with Mr. Malosev to see what other undisclosed evidence there was at Mr. Malosev's fingertips. The result, in part, was Exhibit B. The court finds that had Mr. Malosev not shown in open court his access to this information, the new disclosures would never have been produced. After

Mr. Malosev's display, the court finds, plaintiff could no longer credibly claim that it had disclosed all relevant evidence in their possession.

Ultimately, the court concludes that from the beginning of this litigation, plaintiff has had ready access to all sorts of data directly relevant to this case that only recently they have begun to release in dribs and drabs. The court finds that Mr. O'Hare and Mr. Malosev completely disregarded their legally required discovery obligations until just recently in an attempt to increase their chances of prevailing at trial.

Faced again with yet more late disclosures, plaintiff asks this court now to focus on just how many times Mr. Young admitted in his interrogatories that he followed the terms and conditions that he had allegedly agreed to.

First, the court finds that Mr. Young used this language in his responses not to admit that he had checked the box indicating that he agreed to be bound by the terms and conditions on the website but to articulate that his downloading of the list on April 5, 2020 was not the result of his "manipulating" the website as alleged by plaintiff.

More significant, the court has zero confidence that plaintiff has disclosed the information in its possession regarding the Terms and Conditions box and whether Mr. Young actually checked that box. Again, had all of the recent disclosures been made when they should have and had Mr. O'Hare acknowledged early on that he and Mr. Malosev had ready access to the back end of the original website six months ago, defendants would have had a much fuller basis from which to probe for evidence directly connected to the Terms and Conditions box that plaintiff now insists is at the heart of this case.

I find that because they did not want to disclose evidence that might have helped defendants, they insisted until only recently that there was no computer evidence in their possession other than the fragments of proprietary code information shared with Dr. Gianturco during his February visit and the generic publicly available source code that plaintiff had used but without any of the uniquely specified configurations of that source code for the website.

Based on the foregoing, the court hereby terminates this case, applying the same standard set forth in its April 25, 2023 sanctions order. The trial set for May 15, 2023 is vacated.

The court fully understands Mr. O'Hare's grievance with Mr. Young's downloading Mr. O'Hare's significant collection of phone numbers and then using that list as part of a brand new, competing business. Nevertheless, in bringing suit, plaintiff was required by law to timely disclose any relevant evidence in its possession, even if that evidence would help the other side. Here, plaintiff and its representatives have, until too late, disregarded that law completely.

The court will entertain a motion for the recovery of fees and costs.

Issue Date:  5/12/2023

WILLIAM B BAIN
District Court Judge

| DISTRICT COURT, EL PASO COUNTY, COLORADO | |
|---|---|
| 270 South Tejon Street<br>Colorado Springs, CO 80903 | |
| **Plaintiff:**<br><br>TCPA LITIGATOR LIST,<br><br>v. | ▲ **COURT USE ONLY** ▲ |
| | Case No. 2021CV031668<br><br>Division: 9 |
| **Defendants:**<br><br>ADAM YOUNG, an individual, TUBMANBURG<br>LIMITED, a Bahamas corporation a/k/a Ringba,<br>RINGBA, LLC, a Delaware limited liability company. | |
| **[PROPOSED] ORDER RE DEFENDANTS' FORTHWITH REQUEST FOR HEARING<br>REGARDING PLAINTIFF'S CONTINUED VIOLATION OF COURT ORDERS AND<br>DISCOVERY OBLIGATIONS** | |

Defendants' Forthwith Request for Hearing Regarding Plaintiff's Continued Violation of

Court Orders and Discovery Obligations is hereby GRANTED.

Upon entry of this Order, Counsel for Defendants shall call the Clerk of the Court for the

Court's availability on Wednesday, May 10, 2023 or Thursday, May 11, 2023 to hear argument

on this matter via Webex.

SO ORDERED.

_____
District Court Judge

# EXHIBIT C

| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br><br>270 South Tejon Street<br>Colorado Springs, CO 80903 | |
| **TCPA LITIGATOR LIST,**<br><br>Plaintiff,<br><br>v.<br><br>**ADAM YOUNG, an individual; TUBMANBURG LIMITED, a Bahamas corporation a/k/a Ringba, RINGBA, LLC, a Delaware limited liability company,**<br><br>Defendants. | DATE FILED<br>September 4, 2024 2:45 PM<br>FILING ID: D5873C7337F64<br>CASE NUMBER: 2021CV31668<br><br><br>**▲ COURT USE ONLY ▲**<br><br>Case No.: 2021CV031668<br><br>Div.: 22 |
| *Attorneys for Defendants Adam Young, Tubmanburg Limited and Ringba, LLC:*<br><br>Kendra N. Beckwith, #40154<br>Caitlin C. McHugh, #45097<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>1601 19th Street, Suite 1000<br>Denver, CO 80202<br>Tel.: 303.623.9000<br>Email: kbeckwith@lewisroca.com<br>cmchugh@lewisroca.com | |
| **MOTION AND AFFIDAVIT FOR CITATION FOR CONTEMPT OF COURT** | |

Defendants Adam Young and Ringba LLC, hereby request the Court ordering the Clerk to enter a citation for contempt of court and in support thereof, state as follows:

1. On May 18, 2022, the Court entered a Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/ or Trade Secrets (the "Protective Order") to allow the parties to exchange sensitive information in the case.

2. The Protective Order allowed the parties to designate documents and deposition testimony as Highly Confidential – Attorneys' Eyes Only.

3. Pursuant to the Protective Order, information designated as Highly Confidential – Attorneys' Eyes Only could only be shared with: (a) outside counsel and their staff; (b) experts (so long as a specific process was followed); (c) the Court and its personnel; (d) court reporters and their staff, professional jury or trial consultants, and professional vendors; and the author or recipient of a document containing the information or a custodian or other person who otherwise knew the information.

4. During the C.R.C.P. 30(b)(6) deposition of Ringba, LLC ("Ringba"), counsel for Ringba, Cici Cheng, contemporaneously designated certain sections of the record as Highly Confidential – Attorneys' Eyes Only.

5. Part way into the deposition, counsel for TCPA Litigator List ("TCPA Litigator") requested that Ms. Cheng designate the entire transcript Highly Confidential – Attorneys' Eyes Only to minimize the disruption of switching in and out of Attorneys' Eyes Only. Ms. Cheng agreed, stated the whole transcript would be Highly Confidential – Attorneys' Eyes Only and ensured that TCPA's principal, Michael O'Hare was no longer present. Deposition Transcript 32:23-33:23, attached as Exhibit 1.

6. Adam Young continued testifying relying on the Highly Confidential – Attorneys' Eyes Only designation.

7. At the conclusion of the deposition, the transcript was marked with a watermark on every page that stated "Attorneys' Eyes Only."

8. Ultimately the case was dismissed as a sanction for repeated discovery violations.

9. The Court entered judgment in favor of Ringba for attorneys' fees and costs totaling $641,415.

10. TCPA Litigator appealed both the dismissal order and the award of attorneys' fees and costs.

11. TCPA Litigator did not post a supersedeas bond to stay collection efforts. Instead, when Ringba began working to collect the judgment, TCPA Litigator filed a Petition for Bankruptcy in United States Bankruptcy Court, Case No. 24-12624-KHT ("Bankruptcy Proceeding").

12. On August 28, 2024, TCPA Litigator, at the direction of Michael O'Hare, filed an Ex Parte Motion for Order Authorizing Rule 2004 Examination of Creditor Ringba, LLC's Agents Adam Young and Harrison Gurvitz [sic]." He included as an attachment a List of Interrogatories that disclosed information that was disclosed in this case pursuant to Highly Confidential –Attorneys' Eyes Only and could only be known to Mr. O'Hare if this Attorneys' Eyes Only information was disclosed to Mr. O'Hare by his attorney Michael Cohen. *Compare* Ex. 1, Highly Confidential Attorneys' Eyes Only Ringba, LLC C.R.C.P. 30(b)(6) Deposition 97:18-24 and Ex. 2, List of Interrogatories at Interrogatory No. 11.

13. In filing the List of Interrogatories which included the Highly Confidential – Attorneys' Eyes Only information, Mr. O'Hare ignored the Protective Order and made public sensitive information he never should have been told in the first instance.

14. The List of Interrogatories shows that it was not related to the Bankruptcy Proceeding, but rather a brazen attempt to embarrass Ringba while disregarding the Protective Order.

15. The Bankruptcy Court has now sealed the pleading. However, in subsequent conversations, Mr. O'Hare has stated his intention to continue sharing the Highly Confidential Information.

16. Ringba requests this Court issue an Order to Issue Citation to Michael O'Hare to appear before the Court at a specified date and time for a hearing to show cause why he failed to comply with the Protective Order when he caused Attorneys' Eyes Only information to be publicly filed in the Bankruptcy Court.

17. Ringba is seeking remedial contempt. Specifically, Ringba requests the following from Mr. O'Hare:

    a. Payments of reasonable costs and attorneys' fees Ringba incurred related to this proceeding;

    b. Payment of reasonable costs and attorneys' fees Ringba incurred related to sealing the Interrogatory List in the Bankruptcy Court;

    c. Mr. O'Hare must meet with his prior attorneys and develop an affidavit of all information designated as Attorneys' Eyes Only that was shared with him. This affidavit must be provided to Ringba and filed with the Court under seal;

    d. An affidavit from Mr. O'Hare listing every document, written communication, or recorded communication in his possession that includes reference to the Highly Confidential—Attorneys' Eyes Only information. This affidavit must be provided to Ringba and filed with the Court under seal;

    e. An order requiring Mr. O'Hare to either destroy or provide to the Court all copies of documents, communications, and recording identified in 18(d);

    f. An order requiring Mr. O'Hare and his prior attorney Jeffrey Cohen to sit for a deposition where Ringba will inquire into the sharing of Highly Confidential Attorneys' Eyes Only information with Mr. O'Hare. Mr. O'Hare will be responsible for the fees and costs incurred in those depositions;

g. An order permanently enjoining Mr. O'Hare from using or sharing the Highly Confidential – Attorneys' Eyes Only information identified by Mr. Cohen in 18(b) without prior authorization from this Court (and any such request be submitted to the Court in a filing that is filed as Suppressed or Sealed).

h. Any additional relief the Court determines is reasonable, just, or necessary to ensure future compliance with the Court's Orders.

Dated: September 4, 2024

Respectfully submitted this 4th day of September, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*s/ Caitlin C. McHugh*
Kendra N. Beckwith, #40154
Caitlin C. McHugh, #45097

*Attorneys for Defendants Adam Young,*
*Tubmanburg Limited and Ringba, LLC*

---

VERIFICATION

**I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.**

Executed on the 4th day of September, 2024.

*Adam Young*

Signature

Adam Young

Printed Name

*Caitlin McHugh*

Signature of Attorney

Caitlin McHugh

Printed Name

**It is important that the party accused of contempt read the following information.**

**A party accused of remedial contempt has the following rights:**

1. The right to be represented by a lawyer.
2. The right to a hearing before a judicial officer where the court must find that you were subject to a court order, that you had knowledge of that Order, that you did not comply with the Order, that you had the ability to comply with that Order, that your refusal to comply with the Order was willful, and that you have the present ability to comply with that Order.

If you are found to be in remedial contempt of court, the court may require you to pay the other party's court costs and attorney's fees connected with the contempt hearing, to pay a fine, and/or to serve an indefinite jail sentence until you comply with the original order.

**A party accused of punitive contempt has the following rights:**

1. The right to be represented by a lawyer. If you cannot afford a lawyer and if a jail sentence is contemplated, you may apply for a court-appointed lawyer.
2. The right to a jury if a jail sentence in excess of 180 days is contemplated.
3. If the judge initiated the proceedings, the right to have the contempt matter heard by a different judge.
4. The right to plead guilty or not guilty to the charge of contempt.
5. The right to be presumed innocent unless and until the allegation(s) in the motion for contempt is/are proven beyond a reasonable doubt.
6. The right to confront and cross-examine all witnesses against you.
7. The right to present relevant witnesses and evidence at the hearing.
8. The right to request the court to issue subpoenas to compel witnesses to appear and give testimony.
9. The right to remain silent.
10. The right to testify on your own behalf. If you testify, you waive your right to remain silent and the other party may cross-examine you.
11. The right to make a statement on your own behalf prior to the imposition of sanctions, if you are found in contempt of court.

If the court finds that you were subject to a court order, that you had knowledge of that Order, that you had the ability to obey that Order, that you willfully failed or refused to obey that Order, and that such conduct was offensive to the authority and dignity of the court, you may be sentenced to pay a fine or serve a jail sentence.